# United States Court of Appeals
# for the District of Columbia Circuit

---

NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,

*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF OF *AMICI CURIAE* THE NATIONAL ASSOCIATION
OF HOME BUILDERS OF THE UNITED STATES IN SUPPORT OF
APPELLANT AND REVERSAL

THOMAS J. WARD*
D.C. BAR NO. 453907
NATIONAL ASSOCIATION OF
  HOME BUILDERS OF
  THE UNITED STATES
1201 15th Street, N.W.
Washington, D.C.  20005
(202) 266-8200
tward@nahb.org
*Counsel for Amici Curiae*

May 8, 2024

# CORPORATE DISCLOSURE STATEMENT

In accordance with D.C. Circuit Rule 26.1 and the Federal Rules of Appellate Procedure, amicus National Association of Home Builders of the United States ("NAHB") states that it is a non-profit 501(c)(6) corporation incorporated in the State of Nevada, with its principal place of business in Washington, D.C. NAHB has no corporate parents and no publicly traded stock. No publicly traded company has a ten percent or greater ownership interest in NAHB. It is composed of approximately 700 state and local home builders' associations with whom it is affiliated, but all of those associations are, to the best of NAHB's knowledge, nonprofit corporations that have not issued stock to the public.

# TABLE OF CONTENTS

Page*(s)*

INTEREST OF *AMICUS* ...................................................................1

SUMMARY OF ARGUMENT .............................................................3

ARGUMENT ......................................................................................4

I.    HUD HAS DEVELOPED AN EVIDENTIARY PROCEDURAL RULE ...........................................................................................4

    A.    HUD's Burden Shifting Approach ...............................4

    B.    Rules of Procedure and Evidence are Significant .......5

II.    CONGRESS HAS NOT PROVIDED A CLEAR AUTHORIZATION TO HUD ALLOWING IT TO REGULATE JUDICIAL RULES AND PROCEDURES ..................................................................6

    A.    Congress May and Has Delegated Its Authority Over Court Rules to the Judiciary ...................................6

    B.    A Delegation of Congressional Article III Authority to an Executive Agency Raises Separation of Powers Concerns, Thus Requiring a Clear Statement by Congress .......8

        *1. The Importance/Purpose of the Separation of Powers Doctrine* ................................................. 10

        *2. HUD's Interpretation of the FHA Raises Separation of Powers Concerns* .......................... 11

    C.    Congress Did Not Provide a Clear Indication That It Intended HUD to Develop a Rule of Judicial Procedure ......... 13

III.    HUD IMPROPERLY STEPPED INTO THE SHOES OF THE U.S. SUPREME COURT .......................................................... 16

CONCLUSION.................................................................................. 18

# TABLE OF AUTHORITIES

Page*(s)*

## *Cases*

*Am. Constr. Co. v. Jacksonville, T. & K.W. Ry. Co.,*
  148 U.S. 372 (1893) ............................................................... 17-18

*Buckley v. Valeo,* 424 U.S. 1 (1976) ............................................. 12

*City of Arlington, Tex. v. F.C.C.,* 133 S. Ct. 1863 (2013) ............... 1

*Dickerson v. United States,* 530 U.S. 428 (2000) ...................... 8, 11

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. &*
  *Constr. Trades Council,* 485 U.S. 568 (1988) ......................... 9, 13

*Fed. Election Comm'n v. Cruz,* 596 U.S. 289 (2022) .................... 15

*Greene v. McElroy,* 360 U.S. 474 (1959) ......................................... 9

*Hecht Co. v. Bowles,* 321 U.S. 321 (1944) ....................................... 9

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.,*
  920 F.3d 890 (5th Cir. 2019) ................................................... 6, 16

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers*
  *of Am., UAW v. Occupational Safety & Health Admin.,*
  938 F.2d 1310 (D.C. Cir. 1991) .................................................... 9

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,*
  *UAW v. Occupational Safety & Health Admin., U.S. Dep't of Labor,*
  No. 89-1559, 1991 WL 223770 (D.C. Cir. Sept. 16, 1991) .......... 9

*Kucana v. Holder,* 558 U.S. 233 (2010) ........................................... 9

*Lockerty v. Phillips,* 319 U.S. 182 (1943) ..................................... 16

*Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355 (1986) ......... 15

*Loving v. United States,* 517 U.S. 748 (1996) ............................... 13

# TABLE OF AUTHORITIES (*cont.*)

*Magnum Imp. Co. v. Coty,* 262 U.S. 159 (1923) ............................................ 17

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ............................. 5

*Mistretta v. United States,* 488 U.S. 361 (1989).............................. 7, 8, 11, 12

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
    458 U.S. 50 (1982) ...................................................................................... 10

*Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211 (1995) .................................... 10

*Sibbach v. Wilson,* 312 U.S. 1 (1941) .......................................................... 7, 8

*Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs,*
    531 U.S. 159 (2001)............................................................................8-9, 13

*Speiser v. Randall,* 357 U.S. 513 (1958) ......................................................... 5,

*Stern v. Marshall,* 564 U.S. 462 (2011)......................................................... 10

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,*
    576 U.S. 519 (2015)..................................................................................... 18

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,*
    135 S. Ct. 2507 (2015)................................................................................ 15

*Wal-Mart Stores Inc. v. Dukes,* 131 S.Ct. 2541 (2011) .................................. 11

*Wayman v. Southard,* 23 U.S. 1 (10 Wheat.) (1825) .................................... 7, 8

Page*(s)*

***Constitutional and Statutory Provisions***

U.S. CONST. ART. II, §2, cl. 2 .......................................................... 12

U.S. CONST. ART. III, §1 ..................................................... 6, 10, 16

28 U.S.C. § 1254 ................................................................................ 17

28 U.S.C. § 2071 ................................................................................ 11

42 U.S.C. § 3608(a) ..................................................................... 13, 14

42 U.S.C. § 3612(a) - § 3612(o) ................................................. 13, 14

42 U.S.C. § 3614a ........................................................................ 13, 14

24 C.F.R. § 100.500(c) ........................................ 3, 4, 5, 8, 11, 12, 13, 15, 18

Implementation of the Fair Housing Act's Discriminatory Effects Standard,
    78 Fed. Reg. 11,460 (Feb. 15, 2013) ............................................. 3, 6, 13, 16

HUD's Implementation of the Fair Housing Act's Disparate Impact
    Standard, 85 Fed. Reg. 60,288 (Sept. 24, 2020) ............................................. 3

Reinstatement of HUD's Discriminatory Effects Standard,
    88 Fed. Reg. 19,450 (March 31, 2023) ....................... 1, 3, 4, 5, 13-14, 15, 16

***Other***
75A AM. JUR. 2d *Trial* § 1094 (2d ed. 2024) .................................................... 5

THE FEDERALIST NO. 78 (Alexander Hamilton)
    (Clinton Rossiter ed., 1961) ........................................................................ 10

Page(*s*)

Petition for a Writ of Certiorari, *TDHCA v. ICP,* 135 S. Ct. 2507 (2015) (No. 13-1371), 2014 WL 1989121 ............................................................ 18

Montesquieu, Charles de Secondat, Baron De, *The Spirit of Laws* (1689-1755) ................................................................................... 10

Robert L. Stern, et al., *Supreme Court Practice* (8th ed. 2002) ..................... 17

Paul Taylor, *Congress's Power to Regulate the Federal Judiciary: What the First Congress and the First Federal Courts Can Teach Today's Congress and Courts,* 37 Pepp. L. Rev. 847 (2010) .................................................. 6-7

Sᴜᴘ. Cᴛ. R. 10(a) ............................................................................................. 17

NAHB is a Washington, D.C.-based trade association whose mission is to enhance the climate for housing and the building industry. Chief among NAHB's mission is to provide and expand opportunities for all people to have safe, decent, and affordable housing. Founded in 1942, NAHB is a federation of more than 700 state and local associations. About one-third of NAHB's approximately 140,000 members are home builders or remodelers, and its builder members construct about 80 percent of all new homes in the United States. NAHB is a vigilant advocate in the Nation's courts, and it frequently participates as a party litigant and amicus curiae to safeguard the property rights and interests of its members.

24 C.F.R. section 100.500(c) establishes standards and a process that courts must follow when analyzing Fair Housing Act disparate impact claims. Reinstatement of HUD's Discriminatory Effects Standard, 88 Fed. Reg. 19,450, 19,500 (March 31, 2023).

All agencies are bound by the authority that Congress has delegated to them. *See e.g. City of Arlington, Tex. v. F.C.C.,* 133 S. Ct. 1863, 1869 (2013) (explaining that agencies "power to act and how they are to act is authoritatively prescribed by

---

[1]     Pursuant to D.C. Circuit Rule 29(b), the National Association of Home Builders of the United States ("NAHB") hereby notifies this Court that all parties have consented to the filing of the brief.

Congress . . ..").  In this case, HUD, an executive agency, has developed a regulation that controls the judiciary.

The home building industry is one of the most heavily regulated industries in the country.  As such, NAHB's members must comply with a myriad of federal regulations, and in some instances, they must resort to the judiciary to resolve disputes over such regulations.  Executive agencies develop numerous rules that regulate the home building industry.  If they can also create rules that control how builders must litigate their disputes, then the agencies can create a one-sided system that consistently places home builders at a systemic advantage.  Therefore, NAHB is interested in ensuring that the court prevent executive agencies from developing rules that control judicial procedures and evidence, unless Congress has clearly delegated such authority.

## SUMMARY OF ARGUMENT

Due to a conflict in the courts of appeals, in 2013, HUD first promulgated the current version of 24 C.F.R. § 100.500(c). Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460, 11,462 (Feb. 15, 2013). Then in 2020, it amended that regulation. HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 85 Fed. Reg 60,288 (Sept. 24, 2020). Due to litigation, the 2020 rule never took effect. Reinstatement of HUD's Discriminatory Effects Standard, 88 Fed. Reg. 19,450 (March 31, 2023). HUD's current rule recodifies the 2013 rule. *Id.* Section 100.500(c) of the current rule establishes a three-step process that courts must follow when analyzing Fair Housing Act disparate impact claims. *Id*. at 19,500. Moreover, section 100.500(c) is an evidentiary rule because it establishes the burdens of proof that plaintiffs and defendants must meet when litigating disparate impact claims. *Id*. at 19,484.

In enacting section 100.500(c), HUD has exceeded its authority for two reasons. First, when the executive branch promulgates rules that control the judiciary, separation of powers concerns are raised. Therefore, Congress must provide a clear statement allowing such regulations. Second, it is the Supreme Court's duty to resolve lower court conflicts, not HUD's. Congress has not clearly provided HUD with the authority to create rules that control the judiciary and HUD is not the Supreme Court. Therefore, 24 C.F.R. § 100.500(c) must be vacated.

**ARGUMENT**

## I.  HUD HAS DEVELOPED AN EVIDENTIARY PROCEDURAL RULE.

### A.  HUD's Burden Shifting Approach.

In 24 C.F.R. § 100.500(c) the Agency formalizes "a burden-shifting test for determining whether a given practice has an unjustified discriminatory effect . . .." Reinstatement of HUD's Discriminatory Effects Standard, 88 Fed. Reg. 19,450, 19,451 (March 31, 2023).  As finalized, 24 C.F.R. § 100.500(c) provides:

> (1) The charging party . . . or the *plaintiff* . . . has the *burden of proving* that a challenged practice caused or predictably will cause a discriminatory effect.
>
> (2) Once the charging party or *plaintiff* satisfies the *burden of proof* set forth in paragraph (c)(1) of this section, the *respondent or defendant* has the *burden of proving* that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant.
>
> (3) If the *respondent or defendant* satisfies the *burden of proof* set forth in paragraph (c)(2) of this section, the charging party or *plaintiff* may still prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect.

88 Fed. Reg. at 19,500 (emphasis added).

Pursuant to section 100.500(c) HUD has established a three-step procedure that courts must utilize when adjudicating disparate impact cases.  It is apparent, based on the plain language, that HUD is asserting an authority to regulate judicial rules of procedure and rules of evidence. For example, HUD uses the terms "plaintiff," "respondent" and "defendant," which are clearly parties in litigation.

Similarly, section 100.500(c) provides the order that the plaintiff and defendant must present certain evidence. Finally, HUD attempts to control who has the "burden of proof" during different parts of a trial and what that burden is. 88 Fed. Reg. at 19,500; *see* 75A Am. Jur. 2d *Trial* § 1094 (2d ed. 2024) (explaining that "[i]n charging the jury in a civil case, the *court* should correctly define the degree of proof which the party having the burden of proof must produce to sustain a claim.") (emphasis added).

**B.   Rules of Procedure and Evidence are Significant.**

Rules of procedure and evidence used by courts have a fundamental impact on the outcome of a case. As the Supreme Court has explained: "[t]o experienced lawyers it is commonplace that the outcome of a lawsuit . . . depends more often on how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents." *Speiser v. Randall,* 357 U.S. 513, 520 (1958). In turn, "the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." *Id.* In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793 (1973) the Court used its power to determine the "proper order and nature of proof" in employment discrimination cases. The Court recognized the importance of rules of procedure and evidence by referring to "order and allocation of proof" as a "critical issue." *Id.* at 800.

Clearly, the differing burdens of proof required by the lower federal courts in disparate impact cases are not simply "variation[s] in existing law"[2] as referred to by HUD; instead, these burdens of proof establish the fundamental underpinnings of a court's adjudication in disparate impact cases. *See, Inclusive Communities Project, Inc. v. Lincoln Prop. Co.,* 920 F.3d 890, 902 (5th Cir. 2019) (rejecting HUD burden shifting regulation).

## II. CONGRESS HAS NOT AUTHORIZED HUD TO REGULATE JUDICIAL RULES AND PROCEDURES.

Congress may delegate its authority over the judiciary to the other branches of government. In this case, however, Congress has not provided a clear statement providing HUD (an executive agency) with the authority to develop judicial rules of procedure and evidence.

### A. Congress May and Has Delegated Its Authority Over Court Rules to the Judiciary.

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. ART. III, §1. In turn, the Supreme Court has recognized that Article III vests the "judicial Power" in the Supreme Court while also acknowledging that Congress's authority to establish lower courts provides Congress with certain powers over the conduct of those courts. Paul Taylor,

---

[2]     78 Fed. Reg. at 11,462.

*Congress's Power to Regulate the Federal Judiciary: What the First Congress and the First Federal Courts Can Teach Today's Congress and Courts,* 37 Pepp. L. Rev. 847, 887 (2010) (providing Supreme Court quotes pertaining to Congress's power over the federal courts).

In *Wayman v. Southard*, 23 U.S. 1 (10 Wheat.) (1825) the Court addressed whether Congress may delegate its authority over the judicial branch to the courts. Chief Justice Marshall stated that "Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself." *Id.* at 43. Furthermore, he explained that in the Judiciary Act of 1789, Congress had properly delegated to the courts the authority to "make rules, directing the returning of writs and processes, the filing of declarations and other pleadings, and other things of the same description." *Id.* at 43. This notion was repeated in *Sibbach v. Wilson*, 312 U.S. 1, 9 (1941) where the Court declared "Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or constitution of the United States." More recently, in *Mistretta v. United States*, 488 U.S. 361 (1989) the Court reiterated the idea that Congress may confer some of its powers on the judicial branch. Justice Blackmun explained that Congress "has authorized this Court to establish rules for the conduct of its own business and to prescribe rules of procedure for lower federal courts in

bankruptcy cases, in other civil cases, and in criminal cases, and to revise the Federal Rules of Evidence." *Id.* at 388. Finally, in *Dickerson v. United States,* 530 U.S. 428, 437 (2000) the Court provided that it is "clear" that in the absence of a relevant Act of Congress, the Court "has supervisory authority over the federal courts, and [it] may use that authority to prescribe rules of evidence and procedure that are binding in those tribunals." (emphasis added).

Therefore, pursuant to *Wayman, Sibbach, Mistretta,* and *Dickerson,* there can be little doubt that Congress has the authority to both create judicial procedural rules and to delegate that authority to the courts. It is also clear that absent such a delegation, courts are free to create rules of procedure and evidence to govern judicial proceedings.

**B. A Delegation of Congressional Article III Authority to an Executive Agency Raises Separation of Powers Concerns, Thus Requiring a Clear Statement by Congress.**

In contrast to *Wayman, Sibbach, Mistretta* and *Dickerson,* HUD has gone one step further: it enacted 24 C.F.R. § 100.500(c) on the assumption that Congress has delegated its authority to regulate the procedures of the federal courts to the executive branch. This interpretation of the FHA raises serious concerns under the principle of "separation of powers" and therefore invokes the outer limits of Congress's authority. Thus, pursuant to Supreme Court precedent, HUD's interpretation of the FHA cannot stand unless there exists "a clear indication that

Congress intended that result." *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs,* 531 U.S. 159, 172 (2001), *citing Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988); *Kucana v. Holder,* 558 U.S. 233, 237 (2010) (providing that "[s]eparation-of-powers concerns . . . caution[ed] [the Court] against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain."); *see Greene v. McElroy*, 360 U.S. 474, 507 (1959) (explaining that when an executive department develops procedures "in areas of doubtful constitutionality" there must be explicit authorization to do so); *Hecht Co. v. Bowles,* 321 U.S. 321, 330 (1944) (explaining that when dealing with the court's equity practice, its discretion cannot be limited unless Congress "made its desire plain."). In other words, Congress must provide a "clear statement" when it "intend[s] to test the constitutional waters." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Occupational Safety & Health Admin.,* 938 F.2d 1310, 1317 (D.C. Cir. 1991), supplemented *sub nom. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Occupational Safety & Health Admin., U.S. Dep't of Labor,* No. 89-1559, 1991 WL 223770 (D.C. Cir. Sept. 16, 1991).

*1. The Importance/Purpose of the Separation of Powers Doctrine.*

The principle of separation of powers.

is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features . . . it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict."

*Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 239 (1995). In other words, "[g]ood fences make good neighbors." *Id.* at 240. Furthermore,

In establishing the system of divided power in the Constitution, the Framers considered it essential that "the judiciary remain[ ] truly distinct from both the legislature and the executive." *The Federalist* No. 78, p. 466 (C. Rossiter ed. 1961) (A. Hamilton). As Hamilton put it, quoting Montesquieu, "'there is no liberty if the power of judging be not separated from the legislative and executive powers.'" *Ibid.* (quoting 1 Montesquieu, *Spirit of Laws* 181).

*Stern v. Marshall,* 564 U.S. 462, 483 (2011); *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 58 (1982) (plurality opinion) (explaining that Article III of the Constitution "both defines the power and protects the independence of the Judicial Branch.").[3] Therefore, the Supreme Court, and the framers of the Constitution, recognize the fundamental importance to protect each branch of government and balance authority to govern among the three.

---

[3] While separation of powers "protect[s] each branch of government from incursion by the others," admittedly "the three branches [of government] are not hermetically sealed from one another." *Stern* at 483.

## 2. HUD's Interpretation of the FHA Raises Separation of Powers Concerns.

As explained above, 24 C.F.R § 100.500(c) controls the manner in which courts must adjudicate disparate impact cases. *Supra* p. 4-5. Thus, it is HUD's view that the FHA allows the executive branch to develop procedural rules that control the judiciary. This interpretation raises two distinct issues.

First, HUD's interpretation of the FHA diminishes the power of the judiciary. *Mistretta,* 488 U.S. at 381-82 (explaining that the Court does not hesitate to strike down laws that undermine the authority of a branch of the government). 28 U.S.C. § 2071 provides that "[t]he Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business." As the Court explained, it:

> has supervisory authority over the federal courts, and we may use that authority to prescribe rules of evidence and procedure that are binding in those tribunals. However, the power to judicially create and enforce nonconstitutional "rules of procedure and evidence for the federal courts exists only in the absence of a relevant Act of Congress." Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution.

*Dickerson*, 530 U.S. at 437 (internal citations omitted). Similarly, in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366 (2011) the Court explained (referring to burdens of proof), that *it* had "established a procedure for trying pattern-or-practice cases that gives effect to [Title VII] statutory requirements."

HUD's interpretation of the FHA, however, wrestles the authority to develop procedural/evidentiary rules from the judiciary and places it in the hands of the executive branch. This undermines judicial authority, thereby raising separation of powers concerns. *See Buckley v. Valeo,* 424 U.S. 1, 122 (1976) (stating that separation of powers is a "safeguard against the encroachment or aggrandizement of one branch at the expense of the other.")

In addition to diminishing the judiciary's power, HUD's interpretation of the FHA concentrates executive and judicial authority in the executive branch. *See Mistretta,* 488 U.S. at 382 (explaining that it is the concern of "aggrandizement that has animated [the Court's] separation-of-powers jurisprudence. . ."). Article II of the Constitution provides the executive with the power to appoint federal judges. ART. II, §2, cl. 2. A Congressional delegation authorizing the executive branch to also create judicial procedures (such as section 100.500(c)) provides the executive branch with great control over the manner in which those federal judges decide[4] cases. Combining the power to select federal judges with the authority to control their trial procedures concentrates power in the executive department, thereby raising questions under the principle of separation of powers. *Cf. Mistretta*, (explaining that there was no threat of expanding the powers of the Judiciary

---

[4]    *See supra* p. 4-5.

beyond its constitutional bounds because the Commission's rulemaking power over sentencing already rested in the Judiciary); *Loving v. United States,* 517 U.S. 748, 772 (1996) (explaining that different rules on the limitation of delegation apply when Congress delegates authority that is "interlinked with duties" already assigned to the delegatee).[5]

Thus, by promulgating section 100.500(c), HUD has interpreted the FHA in a manner that diminishes the authority of the judiciary and aggrandizes the power of the executive branch. HUD's reading of the FHA cannot stand unless there is a "clear indication that Congress intended that result." *Solid Waste Agency of N. Cook County,* 531 U.S. at 172 (citing E*dward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988)). No such indication exists.

### C. Congress Did Not Clearly Indicate Its Intent For HUD to Develop a Rule of Judicial Procedure.

HUD claimed that its intent behind 24 C.F.R. § 100.500(c) is "to provide nationwide consistency in the application of [discriminatory effects] liability." 78 Fed. Reg. at 11,460. To do so, HUD relies on Congress's FHA delegation of certain authority under 42 U.S.C. §§ 3608(a), 3612, and 3614a. 88 Fed. Reg.

---

[5] If HUD has the authority to determine the burdens of proof, then arguably it could set those burdens even when the government is involved in disparate impact litigation. This would allow the government to be a party to litigation, make the law, enforce the law, and impact how the case must be adjudicated.

19,450.   Section 3608(a) gives the Secretary of HUD the "authority and responsibility for administering this FHA" and section 3614a provides that "[t]he Secretary may make rules (including rules for the collection, maintenance, and analysis of appropriate data) to carry out this subchapter." 42 U.S.C. §§ 3608(a), 3614a.   These broad grants of authority do not provide any suggestion that Congress provided HUD with the power to develop judicial rules.

Similarly, section 3612 is titled Enforcement by the Secretary.  Section 3612 provides that an aggrieved person may select one of two paths for the Secretary and Attorney General to pursue with respect to a party's complaint.  42 U.S.C. § 3612(a). The party can choose judicial review or an administrative hearing. Moreover, section 3612 provides the timing and steps of these formal adjudications.   With respect to the judiciary, Congress authorizes the Attorney General to commence a civil action and provides the courts with authority to grant relief if a discriminatory housing practice has occurred.  42 U.S.C. § 3612(o).  This language, however, does not suggest that HUD should develop judicial rules of procedure and evidence, or direct HUD to assume a role that is clearly the province of the judiciary.   A plain reading of the delegated authority to HUD for the administration of the FHA shows no clear indication that Congress intended HUD to develop procedural rules that control the judiciary.

More recently, HUD supports its burden-shifting and evidence standards by claiming it rule is "consistent" with *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. 519 (2015) and "long-standing case law." 88 Fed. Reg 19,455.  However, it is axiomatic that simply because caselaw exists on a topic it does not follow that a federal agency has the authority to develop regulations based on that caselaw.  "An agency, after all, 'literally has no power to act' . . . unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Cruz,* 596 U.S. 289, 301 (2022) (quoting *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374, (1986)).

\* \* \*

Thus, while Congress may delegate its authority over judicial rules and procedure, it must clearly indicate its intent to do so if it desires to delegate such authority to the executive branch.  There is no clear indication that Congress has provided HUD with the authority to develop judicial rules of procedure and evidence.  Therefore,  24  C.F.R.  §  100.500(c)  must  be  vacated.

## III. HUD IMPROPERLY STEPPED INTO THE SHOES OF THE U.S. SUPREME COURT.

In 2013, HUD recognized[6] that the courts of appeals were not in agreement concerning the way they analyzed disparate claims and therefore it developed section 100.500(c) to achieve "nationwide consistency." 78 Fed. Reg. at 11,460, 11,462. HUD continues to acknowledge that inconsistency by recognizing that Court of Appeals for the Fifth Circuit has rejected HUD's burden shifting regulation. 88 Fed. Reg. at 19,455 (referring to *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.,* 920 F.3d 890 (5th Cir. 2019)). It is not HUD's job, however, to resolve splits in the courts of appeals.

Article III of the U.S. Constitution provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. ART. III, §1. However, while the Constitution establishes the framework of the judiciary, it is accepted that Congress has authority over the appellate jurisdiction of the Supreme Court. *See e.g. Lockerty v. Phillips,* 319 U.S. 182, 187 (1943) (providing that Congress can prescribe the appellate review of the Supreme Court); *Am.*

---

[6] HUD explained that "[o]ne federal court of appeals applies a multi-factor balancing test, other courts of appeals apply a hybrid between [balancing and burden shifting], and one court of appeals applies a different test for public and private defendants." 78 Fed. Reg. at 11,462.

*Constr. Co. v. Jacksonville, T. & K.W. Ry. Co.,* 148 U.S. 372, 378 (1893) (explaining that the Court "can exercise no appellate jurisdiction, except in the cases, and in the manner and form, defined and prescribed by congress.").

28 U.S.C. § 1254 provides the U.S. Supreme Court with jurisdiction to review cases in the courts of appeals "[b]y writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree . . .." In accord with 28 U.S.C. § 1254, the Supreme Court's rules provide that a "compelling reasons" for granting certiorari is when "a United States court of appeals has created a decision in conflict with the decision of another United States court of appeals on the same important matter . . .." Sup. Ct. R. 10(a). In *Magnum Imp. Co. v. Coty*, 262 U.S. 159, 163 (1923) the Court addressed its jurisdiction to accept cases by certiorari provided by the predecessor to 28 U.S.C. § 1254. It explained that Congress provided it with jurisdiction to accept cases by certiorari from the circuit courts for two reasons, "to secure *uniformity of decision between those courts* in the nine circuits, and second, to bring up cases involving questions of importance which it is in the public interest to have decided by this court of last resort." *Magnum Imp. Co.*, 262 U.S. at 163 (emphasis added); *see* Robert L. Stern, et al., *Supreme Court Practice,* at 226 (8th ed. 2002) ("One of the purposes of certiorari jurisdiction is to bring uniformity of

decisions on [matters of federal and general law] among the federal courts of appeals.").

Moreover, in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,* 135 S. Ct. 2507 (2015) (hereinafter *TDHCA v. ICP*) the Supreme Court held that disparate impact claims are cognizable under the Fair Housing Act. However, the Court did not accept the following question presented by the Petitioner: "If disparate-impact claims are cognizable under the Fair Housing Act, what are the standards and burdens of proof that should apply?" Petition for a Writ of Certiorari at i, *TDHCA v. ICP,* 135 S. Ct. 2507 (2015) (No. 13-1371), 2014 WL 1989121.

Thus, it is within the Supreme Court's authority to resolve conflicts among the courts of appeals, and in *TDHCA v. ICP* it chose not to do so with respect to the manner in which courts should analyze FHA disparate impact claims. By enacting 24 C.F.R. § 100.500(c) HUD unlawfully wrestled from the Supreme Court the opportunity to resolve the conflict in the lower courts.

## CONCLUSION

Due to a conflict in the courts of appeals, HUD has promulgated 24 C.F.R. § 100.500(c). Section 100.500(c) is a procedural and evidentiary rule that requires courts to analyze FHA disparate impact claims in a specific manner. HUD has exceeded its authority for two reasons. First, Congress has not provided a clear

indication that it has delegated to HUD the authority to develop rules of judicial procedure and evidence. Furthermore, it is the Supreme Court's duty to resolve lower court conflicts, not HUD's. Therefore, 24 C.F.R. § 100.500(c) must be vacated.

Respectfully submitted,

/s/ Thomas J. Ward
THOMAS J. WARD*
D.C. BAR NO. 453907

NATIONAL ASSOCIATION OF HOME
  BUILDERS OF THE UNITED STATES
1201 15th Street, N.W.
Washington, D.C. 20005
(202) 266-8200
tward@nahb.org
*Attorney for *Amicus Curiae*
National Association of Home Builders
  of the United States

Dated: May 8, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that National Association of Home Builders of the United States Amicus Curiae Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(a). Excluding the Table of Contents, Table of Authorities, and items not required to be included, this Brief contains 4,187 words, including footnotes. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface in Microsoft Word using Times New Roman, 14-point font.

Respectfully submitted,

/s/ Thomas J. Ward
THOMAS J. WARD*
D.C. BAR NO. 453907

NATIONAL ASSOCIATION OF HOME
  BUILDERS OF THE UNITED STATES
1201 15th Street, N.W.
Washington, D.C.  20005
(202) 266-8200
tward@nahb.org
*Attorney for *Amicus Curiae*
National Association of Home Builders
  of the United States

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, an electronic PDF of the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system, which effected service upon counsel of record through the Court's system.

/s/ Thomas J. Ward
THOMAS J. WARD*
D.C. BAR NO. 453907