No. 23-5275

# In the United States Court of Appeals
# For the District of Columbia Circuit

NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,

*Plaintiff-Appellant,*

v.

HUD, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Columbia (No. 1:13-cv-966,
Hon. Richard J. Leon, J.)

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL

TARA S. MORRISSEY
JONATHAN D. URICK
KEVIN R. PALMER
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, DC 20062

*Counsel for* Amicus Curiae
*Chamber of Commerce of the*
*United States of America*

May 08, 2024

PATRICK STRAWBRIDGE*
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

C'ZAR BERNSTEIN
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209

*Counsel of Record

*Counsel for* Amicus Curiae

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Under D.C. Circuit Rule 28(a)(1), the undersigned counsel for *amicus curiae* submits this certificate as to parties, rulings, and related cases, certifying:

### A. Parties and *Amici*

All parties and amici appearing before this court are listed in the opening brief of Appellant. App.Br.i-ii.

### B. Rulings Under Review

Under review is the district court's September 19, 2023, order and memorandum opinion denying Plaintiff summary judgment, granting Defendants summary judgment, and dismissing the case. D.Ct.Dkt.155 & 156. The district court's decision is not yet reported but is available at *Nat'l Ass'n of Mut. Ins. Companies (NAMIC) v. HUD*, 2023 WL 6142257 (D.D.C.). *See* App.Br.ii.

### C. Related Cases

All related cases that *amicus curiae* is aware of are listed in the opening brief of Appellant. App.Br.ii.

/s/ Patrick Strawbridge
Patrick Strawbridge

May 8, 2024

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

Under Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, *amicus curiae* Chamber of Commerce of the United States of America makes these disclosures: The Chamber is a nonprofit organization organized under the laws of the District of Columbia. It has no parent corporation, subsidiaries, or affiliates with any outstanding securities in the hands of the public. No publicly held company owns ten percent or more of its stock.

<u>/s/ Patrick Strawbridge</u>
Patrick Strawbridge

May 8, 2024

## CERTIFICATE OF COUNSEL REGARDING AUTHORITY TO FILE

Under FRAP 29(a)(2), all parties have consented to the filing of this brief. Under D.C. Circuit Rule 29(d), counsel for *amicus curiae* Chamber of Commerce of the United States of America certifies that it is unaware of any other non-government amicus brief addressing the subject of this brief from the perspective of the broader business community. Appellant has focused and largely limited its arguments to the insurance industry. The Chamber is particularly well-suited to provide the court important context on the ramifications to the wider business community of the disparate-impact rule, and to explain the challenges it would impose even beyond the insurance industry.

# TABLE OF CONTENTS

Table of Authorities ............................................................................. v

Introduction ........................................................................................ 1

Statutes and Regulations ................................................................... 4

Identity and Interest of *Amicus Curiae* ........................................... 4

Argument ............................................................................................. 6

    I.    The disparate-impact rule unlawfully departs from the
          Supreme Court's framework in *Inclusive Communities*. ............ 6

    II.   The disparate-impact rule's illegality affects businesses
          beyond the insurance industry. ................................................. 15

Conclusion ......................................................................................... 19

Certificate of Compliance ................................................................. 21

Certificate of Service ........................................................................ 22

## Cases

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Proj., Inc.*,
 576 U.S. 519 (2015) .............. 1, 2, 3, 6, 7, 8, 9, 10, 11, 14, 15, 17, 18, 19

*Ellis v. City of Minneapolis*,
 860 F.3d 1106 (8th Cir. 2017) .................................................... 9

*Hardie v. N.C.A.A.*,
 876 F.3d 312 (9th Cir. 2017) ..................................................... 13

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co. (Inclusive Communities II)*,
 920 F.3d 890 (5th Cir. 2019) ......................................... 2, 8, 10

*Jones v. City of Boston*,
 845 F.3d 28 (1st Cir. 2016) ..................................................... 13

*Khan v. City of Minneapolis*,
 922 F.3d 872 (8th Cir. 2019) ...................................................... 9

*Louis v. Saferent Solutions, LLC*,
 2023 WL 4766192 (D. Mass.) ................................................... 16

*Nat'l Ass'n of Mut. Ins. Companies (NAMIC) v. HUD*,
 2023 WL 6142257 (D.D.C.) ....................................................... 1

*Ricci v. DeStefano*,
 557 U.S. 557 (2009) ............................................... 3, 7, 10, 13

*Students for Fair Admissions, Inc. v. Harvard*,
 600 U.S. 181 (2023) ............................................................ 1, 14

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
 17 F.4th 950 (9th Cir. 2021) ................................ 2, 3, 7, 8, 9, 11, 13, 14

*Wards Cove Packing Co. v. Atonio*,
 490 U.S. 642 (1989) ............................................................... 3, 7

*Watson v. Fort Worth Bank & Trust*,
 487 U.S. 977 (1988) ................................................................ 17

**Statutes**

15 U.S.C. §1607 ................................................................. 18

15 U.S.C. §1639b ............................................................... 18

15 U.S.C. §1640 ................................................................. 18

15 U.S.C. §1639c ............................................................... 15

42 U.S.C. §3601 ................................................................... 5

42 U.S.C. §3604 ................................................................... 1

5 U.S.C. §706 ..................................................... 4, 7, 15, 19

**Other Authorities**

Ctr. for Capital Markets Competitiveness, *The Economic Benefits of Risk-Based Pricing For Historically Underserved Consumers in the U.S.* (2021), https://www.centerforcapitalmarkets.com/resource/rbp/ ....... 15

**Regulations**

12 C.F.R. §1026.43 ............................................................ 16

24 C.F.R. §100.500 ............................ 2, 3, 4, 5, 8, 10, 11, 12, 14, 18

38 C.F.R. §36.4340 ........................................................... 17

78 Fed. Reg. 11,460 (Feb. 15, 2013) ........................... 1, 2, 16, 17

78 Fed. Reg. 6,408 (Jan. 30, 2013) ................................... 15, 16

85 Fed. Reg. 60,288 (Sept. 24, 2020) ............... 1, 2, 3, 8, 9, 11, 12, 18

88 Fed. Reg. 19,450 (Mar. 31, 2023) ..................... 1, 10, 12, 18

<u>**GLOSSARY**</u>

FHA          Fair Housing Act

HUD        U.S. Department of Housing and Urban Development

The Supreme Court's decision in *Inclusive Communities* struck a delicate balance between the requirements of the Constitution and the Fair Housing Act, 42 U.S.C. §3604(a), (b). 576 U.S. 519 (2015). While the Constitution prohibits racial classifications not justified under strict scrutiny, *see Students for Fair Admissions, Inc. v. Harvard*, 600 U.S. 181 (2023), FHA-based disparate-impact theories may under some circumstances lead regulated entities to abandon neutral policies or procedures in order to address racial outcomes, *Inclusive Communities*, 576 U.S. at 539-47. Because those two principles can pull in different directions, the Court in *Inclusive Communities* imposed safeguards around disparate-impact liability under the FHA. *Id.*

In 2020, HUD incorporated those safeguards into regulations that govern disparate-impact liability under the FHA. 85 Fed. Reg. 60,288, 60,332-33 (Sept. 24, 2020) ("2020 rule"). But three years later, in an about-face, HUD reinstated its pre-*Inclusive Communities* liability framework "*verbatim.*" *Nat'l Ass'n of Mut. Ins. Companies (NAMIC) v. HUD*, 2023 WL 6142257, at *4 (D.D.C.); 88 Fed. Reg. 19,450 (Mar. 31, 2023). That framework, initially drafted in 2013, 78 Fed. Reg. 11,460

1

(Feb. 15, 2013), omits at least four of the safeguards the Supreme Court later imposed.

First, the Supreme Court imposed a "robust causality requirement." *Inclusive Communities*, 576 U.S. at 542. It requires showing "that the challenged policy, and not some other factor or policy, caused the disproportionate effect." *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 962 (9th Cir. 2021). "In contrast, the HUD regulation contains no 'robust causation' requirement.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co. (Inclusive Communities II)*, 920 F.3d 890, 902 (5th Cir. 2019).

Second, the Court explained that the FHA does not forbid private policies "unless they are 'artificial, arbitrary, and unnecessary.'" *Inclusive Communities*, 576 U.S. at 543. While the 2020 rule incorporated that limitation, 85 Fed. Reg. at 60,332-33, HUD eliminated it in 2023, 24 C.F.R. §100.500.

Third, the Court explained that a neutral policy that results in a disparate impact need not be "necessary" to achieve an entity's legitimate interests in order to be justified. *See Sw. Fair Hous. Council*, 17 F.4th at

967-68 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 659 (1989)). HUD disagrees. *See* 24 C.F.R. §100.500(b)(1)(i), (c)(2).

Finally, the Supreme Court requires plaintiffs to propose alternative policies that are "equally effective," *see Sw. Fair Hous. Council*, 17 F.4th at 970 (citing *Wards Cove*, 490 U.S. at 661), or "equally valid," *Ricci v. DeStefano*, 557 U.S. 557, 589-90 (2009), before regulated entities can be held liable for not adopting them. But again, HUD rewrites the standard to require only that alternatives "*could* … serv[e]" entities' interests. 24 C.F.R. §100.500(b)(1)(ii), (c)(3) (emphasis added).

Failing each of these safeguards and rewriting each of these settled standards, HUD's revived pre-*Inclusive Communities* rule opens the door to requiring race to "be used and considered in a pervasive and explicit manner" across the economy, not just in the insurance industry. *See Inclusive Communities*, 576 U.S. at 543. Regulated entities may be required to replace neutral policies that have long advanced "substantial" interests with alternatives that are less effective, costlier, and more burdensome. *Compare* 85 Fed. Reg. at 60,332-33 (plaintiff must show the alternative policy "would serve the defendant's identified interest … in an equally effective manner without imposing materially greater costs

on, or creating other material burdens for, the defendant"), *with* 24 C.F.R. §100.500 (eliminating that safeguard).

Because the rule eliminates key safeguards, in direct conflict with *Inclusive Communities*' saving construction of the FHA, it is unlawful and must be "set aside." 5 U.S.C. §706(2).

## STATUTES AND REGULATIONS

All applicable statutes and regulations are identified in the Brief for Appellants. App.Br.4-6.

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amicus curiae* and their counsel contributed money intended to fund the preparation or submission of this brief. The parties have consented to its filing.

Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber, on behalf of its members, has a substantial interest in the outcome of this case. The Chamber and its members are strongly committed to the eradication of discrimination from the marketplace, and to ensuring that financial services are provided to all consumers in a fair and even-handed manner. Mindful of these goals, the Chamber's members are also concerned about the potential for overbroad liability for disparate-impact claims under the Fair Housing Act, 42 U.S.C. §3601 *et seq.*, and in particular under HUD's disparate-impact rule, 24 C.F.R. §100.500, which lacks critical safeguards the Supreme Court announced in *Inclusive Communities*.

This Court's ruling on whether HUD's disparate-impact rule is lawful and consistent with the safeguards announced in *Inclusive Communities*, as HUD contends, will provide important guidance to the Chamber and its members. Resolution of this question will reduce the uncertainty that presently exists in this area of the law and will promote compliance, to the benefit of businesses and the public.

## ARGUMENT

HUD's disparate-impact rule effectively requires regulated entities—from state governmental departments to bank lenders—to replace neutral policies that advance the substantial interests of businesses and consumers with policies that do so less effectively and that impose materially greater costs and burdens. The Supreme Court carefully crafted safeguards to ensure that the FHA never puts regulated entities in that position. But HUD's disparate-impact rule ignores key aspects of the Supreme Court's construction of the FHA. It is therefore unlawful, and should be set aside.

## I. The disparate-impact rule unlawfully departs from the Supreme Court's framework in *Inclusive Communities*.

*Inclusive Communities* acknowledged that broad disparate-impact liability raises constitutional concerns. As the Court explained, "disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA." *Inclusive Communities*, 576 U.S. at 540.

The Supreme Court has articulated several safeguards around disparate-impact liability. First, there is a "robust causality requirement" that plaintiffs must overcome at the prima-facie stage. *Id.*

6

at 542. Second, policies are not unlawful "unless they are 'artificial, arbitrary, and unnecessary." *Id.* at 543. Third, a defendant need not show that its policy is *necessary* to serve "its legitimate interests." *See Sw. Fair Housing Council*, 17 F.4th at 967 (citing *Wards Cove*, 490 U.S. at 659). Finally, plaintiffs must propose alternative policies that are "equally effective," *see id.* at 970 (citing *Wards Cove*, 490 U.S. at 661), or "equally valid," *Ricci*, 557 U.S. at 589-90, at serving the defendant's valid interests.

By mandating these safeguards, the Supreme Court saved the FHA's disparate-impact provision from the constitutional problems that it might otherwise present—and at the same time, limited the scope of rulemaking that may derive from this provision. HUD has now recreated a rule it drafted prior to *Inclusive Communities*, and it pays its safeguards no heed. The rule is therefore unlawful because it exceeds the scope of HUD's authority to create liability under the FHA, as the Supreme Court has defined that scope. 5 U.S.C. §706(2)(C).

**1. "Robust causality."** *Inclusive Communities* recognized a key safeguard against disparate impact liability: a "robust causality requirement" applies "at the prima facie stage" to "ensure[] that racial

imbalance does not, without more, establish a prima facie case of disparate impact." 576 U.S. at 542 (cleaned up). The plaintiff must demonstrate "robust causality that shows, beyond mere evidence of statistical disparity, that the challenged policy, *and not some other factor or policy*, caused the disproportionate effect." *Sw. Fair Housing Council*, 17 F.4th at 962 (emphasis added). The 2020 rule incorporated this requirement by requiring plaintiffs to "plead facts to support … [t]hat there is a *robust* causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the *direct cause* of the discriminatory effect." 85 Fed. Reg. at 60,332 (emphases added).

By contrast, the current rule appears to dilute the causation standard by declaring that "[l]iability may be established … based on a practice's discriminatory effect." 24 C.F.R. §100.500. A plaintiff must merely first prove "that a challenged practice caused or predictably will cause a discriminatory effect." *Id.* §100.500(c)(1). It follows that HUD's "regulation contains no 'robust causation' requirement," *Inclusive Communities II*, 920 F.3d at 902, unlike the 2020 rule.

**2. "Artificial, arbitrary, and unnecessary."** *Inclusive Communities* explained that "private policies are not contrary to the disparate-impact requirement *unless* they are 'artificial, arbitrary, *and* unnecessary.*"* 576 U.S. at 540, 543, 544 (emphases added); *see id.* at 544-45 ("offending practice[s]" are those that "*arbitrarily* operat[e] invidiously to discriminate") (emphasis added) (cleaned up)). Courts of Appeals have recognized that "[u]nder *Inclusive Communities*, a plaintiff must, at the very least, point to an 'artificial, arbitrary, and unnecessary' policy causing the problematic disparity." *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1114 (8th Cir. 2017); *see also Khan v. City of Minneapolis*, 922 F.3d 872, 874 (8th Cir. 2019) (similar); *Sw. Fair Hous. Council*, 17 F.4th at 967, 971-72 (similar).

HUD's 2020 rule faithfully incorporated this safeguard. 85 Fed. Reg. at 60,332-33 (plaintiff must allege that the practice "is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective" and defendant can "rebut" that allegation by "showing that the challenged policy or practice advances a valid interest … and is therefore not arbitrary, artificial, and unnecessary"). But not HUD's resurrected pre-*Inclusive Communities* rule. Under this rule, even neutral policies

that advance "substantial" interests may be unlawful if they "could be served by another practice that has a less discriminatory effect." 24 C.F.R. §100.500(c)(3).

HUD's only defense to this patent syntactical tension is that its pre-*Inclusive Communities* rule and *Inclusive Communities*' "artificial, arbitrary, and unnecessary" test are identical in substance. *See* 88 Fed. Reg. at 19,471-72. But it is hard to see how a policy that advances a *substantial* or even a *legitimate interest* could be "arbitrary." *See Ricci*, 557 U.S. at 589 (extant "60/40 weighting" on an exam was "rational" and not "arbitrary" even though a proposed "30/70 weighting" would have had a less disparate racial impact); *Inclusive Communities*, 576 U.S. at 544 (distinguishing "arbitrary and unnecessary barriers" from "valid governmental and private priorities"). As one Court of Appeals held, *Inclusive Communities* "undoubtedly announce[d] a more demanding test than that set forth in the HUD regulation." *Inclusive Communities II*, 920 F.3d at 902-03 & n.6 (holding that "the Supreme Court's language … is stricter than the regulation itself" and that the court was "bound to apply the stricter version of the burden-shifting analysis"). In short, HUD has fashioned an end-run around the Supreme Court by creating liability

for neutral, valid, non-arbitrary policies after *Inclusive Communities* recognized a safeguard foreclosing such liability.

**3. Tailoring requirement.** Further, the disparate-impact rule is unlawful because it requires that the private practice be "*necessary* to achieve" substantial interests. 24 C.F.R. §100.500(c)(2) (emphasis added). The Courts of Appeals have instead interpreted the Supreme Court's safeguards to relieve the defendant of any requirement to "demonstrate that the challenged policy is 'essential' or 'indispensable' to its business—only that the policy 'serves, in a significant way,' its legitimate interests." *See Sw. Fair Hous. Council*, 17 F.4th at 967-68 (applying *Inclusive Communities* and *Wards Cove*) (cleaned up). HUD's pre-*Inclusive Communities* rule "render[s] the defense a nullity." *See id.* That result was intentional. By contrast, HUD's 2020 rule required the defendant to show only "that the challenged policy or practice advances a valid interest," 85 Fed. Reg. at 60,332-33—the kind of "rational tailoring" that this safeguard protects, *Sw. Fair Hous. Council*, 17 F.4th at 971, and the type of language the Supreme Court used, *Inclusive Communities*, 576 U.S. at 544 (distinguishing "valid … priorities" from "arbitrary[] and unnecessary barriers").

**4. Proposed alternatives.** Finally, the disparate-impact rule illegally allows a proposed alternative to suffice even if it is a *less* effective means of achieving the regulated entity's neutral and legitimate interest. 88 Fed. Reg. at 19,491. And HUD permits a proposed alternative to impose "materially greater costs" and "burdens." *Cf.* 85 Fed. Reg. at 60,332-33 (2020 rule).

By contrast, under the 2020 rule, if a defendant had shown "that the challenged policy or practice advances" a non-arbitrary interest, the plaintiff was required to show that an alternative practice "would serve the defendant's identified interest … in an *equally effective* manner without imposing materially greater costs" or burdens. *Id.* at 60,332-33 (emphasis added). Again, this version of the rule complied with *Inclusive Communities*. But HUD eliminated the 2020 rule's careful adherence to that safeguard by returning to its 2013 language, requiring only that the plaintiff show "that the substantial … interes[t] supporting the challenged practice could be served by another practice." 24 C.F.R. §100.500(c)(3).

HUD admits that its rule does not require that the alternative be equally effective. *See* 88 Fed. Reg. at 19,491. That admission proves the

illegality of the rule. *See Ricci*, 557 U.S. at 589 (no evidence that proposed alternative exam weighting "would be an equally valid way to determine whether candidates possess the proper mix of job knowledge and situational skills"). Post-*Inclusive Communities*, Courts of Appeals have held that disparate-impact plaintiffs' "'proposed alternative(s) must be *equally effective* as the defendant's chosen policy at serving the defendant's interest(s), taking into account factors such as the cost or other burdens that alternative policies would impose.'" *Sw. Fair Hous. Council*, 17 F.4th at 970 (cleaned up); *cf. Hardie v. N.C.A.A.*, 876 F.3d 312, 320 (9th Cir. 2017) ("The plaintiff's proposed alternative(s) must be 'equally effective' as the defendant's chosen policy at serving the defendant's interest(s)…"); *Jones v. City of Boston*, 845 F.3d 28, 34-35 & n.3 (1st Cir. 2016) (finding that disparate impact plaintiffs' "proffered alternative equally [could] have met the [defendant's] needs"). For that reason, disparate-impact liability under the FHA requires plaintiffs "to provide evidence that equally effective and less discriminatory alternatives exist." *Sw. Fair Hous. Council*, 17 F.4th at 970. Ignoring "costs and burdens … incorrectly signals that justified, deliberate, and legitimate policies, which impact protected groups, violate the FHA." *Id.*

at 971. The resurrected 2013 rule therefore illegally compels regulated entities to choose policies that less effectively advance their interests at higher costs, all to secure a different racial effect—the definition of the use of race "in a pervasive way," *see Inclusive Communities*, 576 U.S. at 542.

*     *     *

The Supreme Court has carefully crafted safeguards to ensure that the FHA does not require a regulated entity to abandon a neutral policy that substantially advances its interests in favor of an alternative that is less effective, costlier, and more burdensome. The safeguards allow entities to maintain neutral policies "rational[ly] tailor[ed]" to serve legitimate interests more effectively than available alternatives. *Sw. Fair Hous. Council*, 17 F.4th at 971.

HUD's disparate-impact rule undermines those protections by requiring neutral policies to survive something more like strict scrutiny. *Compare* 24 C.F.R. §100.500(c) (neutral policy must be "necessary to achieve" a "substantial" interest such that there are no "less" restrictive means), *with Harvard*, 600 U.S. at 206-07 ("'narrowly tailored'—meaning 'necessary'—to achieve" a compelling interest). "Were standards for

proceeding with disparate-impact suits not to incorporate *at least* the safeguards discussed in" *Inclusive Communities*, "then disparate-impact liability might displace valid governmental and private priorities, rather than solely removing artificial, arbitrary, and unnecessary barriers." 576 U.S. at 544 (cleaned up). Because HUD's disparate-impact rule lacks those critical safeguards, this Court should set it aside. 5 U.S.C. §706(2).

## II. The disparate-impact rule's illegality affects businesses beyond the insurance industry.

The disparate-impact rule will not just "cause" the "pervasive" use of "race" in the insurance industry. *See Inclusive Communities*, 576 U.S. at 542-43. For example, the lending industry, like the insurance industry, engages in "risk-based" pricing. App.Br. 1, 18, 23-27; *see* Ctr. for Capital Markets Competitiveness, *The Economic Benefits of Risk-Based Pricing For Historically Underserved Consumers in the U.S.* (2021), https://www.centerforcapitalmarkets.com/resource/rbp/. Risk-based analysis requires looking at borrowers' credit profile—income, debt, credit score, and the like. These kinds of non-racial factors "correlat[e] with loan performance." *See* 78 Fed. Reg. 6,408, 6,527 (Jan. 30, 2013). For that reason, federal law requires certain lenders to verify that borrowers have a "reasonable ability to repay the loan." 15 U.S.C. §1639c(a)(1), (2).

Lenders generally *must* make that determination based on similar factors. *See* 12 C.F.R. §1026.43(c)(2). With good reason: These race-neutral policies advance Congress's interest in preventing another "mortgage crisis." *See* 78 Fed. Reg. at 6,408 ("too many mortgages were made to consumers without regard to the consumer's ability to repay").

The disparate-impact rule threatens to force regulated entities to revisit these types of neutral policies. For example, consideration of credit scores might affect groups differently and therefore risk exposure to disparate-impact liability. HUD originally downplayed that concern, asserting that the rule would not "encourage lawsuits challenging credit scores, or other credit assessment standards, or the requirements of the Dodd-Frank Act." 78 Fed. Reg. at 11,476. Unsurprisingly, ignoring *Inclusive Communities*' safeguards—against the weight of circuit authority—will result in FHA claims against similar policies by, for example, rental businesses.[2] The disparate-impact rule therefore creates

---

[2] *See, e.g.*, *Louis v. Saferent Solutions, LLC*, 2023 WL 4766192, at \*11-12 & n.8 (D. Mass.) (holding, despite noting the weight of contrary Court of Appeals authority, that plaintiff states a disparate-impact claim if a "policy that relies on credit scores to evaluate rental applications will have a disproportionate impact" on identified racial groups, even if the policy isn't "'arbitrary'").

a situation in which private entities may face claims of liability based on perfectly reasonable policies that federal agencies themselves impose on the mortgage guarantees and insurance they provide. *See, e.g.*, 38 C.F.R. §36.4340 (establishing credit standards, relating to a borrower's "income and expenses, and credit history," necessary to qualify for a mortgage guarantee from the Department of Veterans Affairs).

The result, as HUD originally admitted, is to encourage regulated "lenders … to conduct internal discriminatory effects analyses," 78 Fed. Reg. at 11,476, which—if not carefully managed—could lead to the "pervasive" use of race, *see Inclusive Communities*, 576 U.S. at 542. Larger and more sophisticated lenders may be able to conduct those analyses effectively and thereby mitigate the disparate-impact risk associated with their race-neutral credit standards. But entities without similar resources and expertise could feel "pressure" to adopt "inappropriate prophylactic measures" to balance the racial outcomes of their lending practices. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 992-93 (1988) (plurality opinion). A framework in which an entity is pressured to abandon a neutral, valid, policy in favor of a less effective

alternative raises the very constitutional concerns the Supreme Court worked to avoid in *Inclusive Communities*.

The 2020 rule also recognized a defense for all regulated entities for policies that are "reasonably necessary to comply with" federal law, 85 Fed. Reg. at 60,333, as *Inclusive Communities* requires, 576 U.S. at 543 (no causation if "federal law substantially limits … discretion"). The disparate-impact rule eliminates that safeguard too, *see* 24 C.F.R. §100.500, and explicitly notes that "mortgage banks" will be required to rely on HUD's naked assurances that all will be well, *see* 88 Fed. Reg. at 19,493. Regulated entities now have no protection from the costs and reputational damage associated with defending against any suits that might now be brought under the rule, but that the 2020 rule would have deterred through its adherence to safeguards. Worse, regulated entities may well be caught in a catch-22: risk liability either for disparate impact or for failing to comply with federal requirements. *See, e.g.*, 15 U.S.C. §§1607, 1639b, 1640 (allowing administrative and private enforcement, including for "the greater of actual damages" or the treble of the lender's "compensation or gain … plus the costs to the consumer of the action, including a reasonable attorney's fee").

HUD's disparate-impact rule creates pressure on businesses across the economy to abandon longstanding, neutral, and previously uncontroversial business policies and practices—like the actuarial policies Appellants emphasize here—in favor of less effective alternatives. Because it lacks the critical safeguards set forth in *Inclusive Communities*, 576 U.S. at 544-45, HUD's rule is unlawful and must be set aside, 5 U.S.C. §706(2).

## CONCLUSION

For these reasons, the Court should reverse the district court's judgment.

Date: May 08, 2024                    Respectfully submitted,


Tara S. Morrissey                     /s/ Patrick Strawbridge
Jonathan D. Urick
Kevin R. Palmer
U.S. CHAMBER LITIGATION               PATRICK STRAWBRIDGE*
CENTER                                CONSOVOY MCCARTHY PLLC
1615 H Street, N.W.                   Ten Post Office Square
Washington, DC 20062                  8th Floor South PMB #706
                                      Boston, MA 02109
Counsel for Amicus Curiae             (617) 227-0548
Chamber of Commerce of the            patrick@consovoymccarthy.com
United States of America
                                      C'ZAR BERNSTEIN
                                      CONSOVOY MCCARTHY PLLC
                                      1600 Wilson Blvd., Suite 700
                                      Arlington, VA 22209
                                      (703) 243-9423

                                      *Counsel of Record

                                      Counsel for Amicus Curiae

<u>C**ERTIFICATE OF** C**OMPLIANCE**</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5), Fed. R. App. P. 32(a)(7), and D.C. Cir. R. 28 and 29, because this brief contains 4,637 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Date: May 08, 2024

*/s/ Patrick Strawbridge*
P**ATRICK** S**TRAWBRIDGE**
C**ONSOVOY** M**C**C**ARTHY** PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

Under Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that, on May 08, 2024, I electronically filed the foregoing *Brief of Chamber of Commerce of the United States as Amicus Curiae in Support of Appellant and Reversal* with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Date: May 08, 2024

*/s/ Patrick Strawbridge*
PATRICK STRAWBRIDGE
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548

*Counsel for Amicus Curiae*
