# ATTACHMENT 1

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Case No. 03-94-0529-8

CONCILIATION AGREEMENT

between

THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

and

NATIONAL FAIR HOUSING ALLIANCE

and

ALLSTATE INSURANCE COMPANY

1

U.S. Department of Housing and Urban Development
Case No. 03-94-0529-8

## Conciliation Agreement

**WHEREAS** the National Fair Housing Alliance (NFHA) located at 1212 New York Avenue, Suite 525, Washington, DC, filed a complaint (03-94-0529-8) with the United States Department of Housing and Urban Development (HUD) on May 11, 1994 against Allstate Insurance Company (Allstate) and NFHA subsequently amended its administrative complaint on September 14, 1995 (hereafter the "Administrative Complaint"); and

**WHEREAS** Allstate and NFHA have cooperated with HUD's investigation;

**WHEREAS** HUD has made no determination pursuant to 42 U.S.C. § 3610(g)(1) and 24 C.F.R. § 103.400 regarding whether, based upon the totality of factual circumstances known as a result of the investigation, there is reasonable cause to believe that a discriminatory housing practice has occurred or is about to occur; and

**WHEREAS** Allstate has demonstrated a substantial commitment to the marketing and sale of homeowners policies to the urban marketplace and in the marketing and sale of homeowners policies to African Americans and Hispanics, and is an acknowledged leader in urban initiatives;

**WHEREAS** all parties to this Agreement share a commitment to fair access to homeowners insurance while supporting sound underwriting and business practices;

**NOW, THEREFORE,** for and in consideration of the mutual agreements, covenants and conditions contained in this Agreement, Allstate, the NFHA, and HUD (the "Parties") hereby stipulate and agree as follows:

### General Provisions

1. Allstate's entry into this Agreement is not, and shall not be construed as or deemed to be, an admission by Allstate or evidence as to any issue of fact or law in this matter, including without limitation (a) the validity or viability of any of NFHA's claims, (b) Allstate's liability to the NFHA, its members, or any other person, or entity, (c) the allegation that Allstate engaged in any discriminatory practice, (d) whether Allstate engaged in any improper conduct in any way as a result of the matters alleged in the Administrative Complaint, (e) whether HUD has jurisdiction over the Administrative Complaint, or (f) whether the Fair Housing Act applies to the conduct challenged by the Administrative Complaints.

2

2.  On February 3, 1997, or on such other date as all of the Parties hereto may hereafter agree but no later than March 3, 1997, the Parties agree to issue a joint press release at a joint press conference in Washington, D.C. announcing this Agreement in the form appended hereto as Exhibit A.

3.  The NFHA, and each of its current and former parents, subsidiaries, employees, officers, directors, independent contractors, testers, agents, attorneys, heirs, successors and assigns, and HUD (the "Releasing Parties") hereby forever release Allstate and its current and former parents, affiliates, related parties, subsidiaries, officers, directors, employees, agents, employees of agents, attorneys, regional offices, predecessors, successors, and assigns (collectively the "Allstate Released Parties") from any and all claims arising out of or related to any claims or other matters which were or could have been asserted, or which otherwise were at issue in the Administrative Complaint including without limitation any claims based upon NFHA's testing of Allstate and/or its agents in any location. This release shall be construed as providing a release to the Allstate Released Parties which is coextensive with the reach of the doctrine of <u>res judicata</u>. In addition, the NFHA and each of its current and former parents, subsidiaries, employees, officers, directors, independent contractors, testers, agents, attorneys, heirs, successors and assigns covenant not to sue the Allstate Released Parties for activity or conduct occurring prior to and during the term of this Agreement allegedly involving a violation of the Fair Housing Act, or state laws relating to fair housing issues, or a federal, state, or local civil rights law, statute or ordinance which has been or could be construed as prohibiting discrimination in the sale of property insurance. Further, during the term of this Agreement, HUD agrees not to undertake any investigation of the Allstate Released Parties pursuant to HUD's authority to initiate Secretary initiated investigations of housing practices to determine whether a discriminatory housing practice has occurred.

4.  **Statement of Nondiscrimination.** Allstate reaffirms its longstanding policy that homeowners insurance will not be denied because of race, color, religion, sex, handicap, familial status, or national origin. Allstate contends that it has always made available all forms of its homeowners insurance without regard to race, color, religion, sex, handicap, familial status or national origin of the individual applicant and without regard to the racial/ethnic composition of the neighborhood in which the subject property is located. Throughout the term of this Agreement, Allstate shall make available all forms of its homeowners insurance without regard to race, color, religion, sex, handicap, familial status or national origin of the individual applicant and without regard to the racial/ethnic composition of the neighborhood in which the subject property is located. Allstate further acknowledges that retaliating against

3

any person because that person has made a complaint, testified, assisted, or participated in any manner in asserting his or her rights or assisting another assert his or rights under the Fair Housing Act is prohibited under 42 U.S.C. § 3617.

5. **Duration.** This Conciliation Agreement shall have a duration of three (3) years, unless a different term is specified in a provision of this Agreement, with such period commencing on the date of the final execution of this Agreement.

6. **Urban Investment and Opportunity Markets.** NFHA and HUD acknowledge that Allstate is an industry leader in its efforts to recognize and market to the urban community and the Hispanic marketplace where there are growth opportunities for the sale of property policies. Through its urban initiative Allstate has committed resources toward affirmative marketing directed at the urban marketplace, including the African American market, and has implemented its Neighborhood Partnership Program (NPP). Through the NPP, begun on Allstate's own initiative in 1993, Allstate has forged alliances between it and community groups. Fundamental elements of the NPPs have included, where appropriate, the placement of sales and service centers to serve policyholders in the urban community, the placement of agent locations in urban areas, free safety inspections of residences in order to enhance the insurability of residences, educational programs to help prevent losses including theft and fire and to inform the community about insurance related issues, and significant financial support and investments including investments directed at revitalization of the urban community.

Allstate has already established NPPs in the cities of Atlanta, Chicago, Cleveland, Dallas, Detroit, Houston, Louisville, Milwaukee, New York, Philadelphia, and Washington, D.C., and is in the process of creating them in Bridgeport and Hartford, Connecticut, Denver, Colorado, Kansas City, Missouri, Los Angeles, California, Memphis, Tennessee, Miami, Florida, New Orleans, Louisiana, Seattle, Washington, and St. Louis, Missouri. Through its existing urban initiatives, Allstate has already placed Sales and Service Centers or Allstate Agent Locations in a predominantly African-American and/or Latino neighborhood in several cities including Atlanta, Georgia, Chicago, Illinois, Louisville, Kentucky, and Milwaukee, Wisconsin, and plans to add Sales and Service Centers or Allstate Agent Locations in Los Angeles, California, and Memphis, Tennessee. Allstate plans to place these locations by the end of 1997. Allstate agrees to maintain this implementation schedule.

Recognizing that NFHA, its members and Allstate share the common goal of encouraging the purchase of homeowners insurance in opportunity markets including the urban marketplace, and that the NPPs are an effective means of doing so, Allstate will create and implement NPPs in the additional cities of Akron, Cincinnati

4

and Toledo, Ohio, and Richmond, Virginia. Allstate will complete implementation of these NPPs within one year from the date of this Agreement. Allstate will consult with NFHA members in identifying the appropriate neighborhood areas in which to place NPPs and the appropriate community groups with which to forge alliances in the four above listed cities.

In addition to the above commitments and as part of its existing urban initiatives, Allstate agrees to place a Sales and Service Center or Allstate Agent Location in a predominantly African-American and/or Latino neighborhood in each of the cities of Akron, Cincinnati and Toledo, Ohio, and Richmond, Virginia within one year from the date of this Agreement.

In addition to the above commitments, Allstate will, within 90 days from the date of this Agreement, designate a Regional representative (the "Allstate Liaison") in the cities of Milwaukee, Cincinnati, Toledo and Richmond to communicate with the Metropolitan Milwaukee Fair Housing Council, Inc., Housing Opportunities Made Equal (Cincinnati), Fair Housing Center of Toledo, Ohio, and Housing Opportunities Made Equal of Richmond, Inc. The Allstate Liaison will create programs in consultation with such members to educate the community on insurance related issues including holding insurance education workshops and conferences for the community. The Allstate Liaison will also serve as a conduit for communication from the members concerning issues related to Fair Housing and will hold formal meetings on a quarterly basis for the term of this Agreement to discuss issues relating to insurance availability.

7. **Consulting and Compensation.** Allstate believes a professional relationship with NFHA will enhance its existing efforts to serve opportunity markets. Therefore, Allstate agrees to engage NFHA as an independent contractor to provide fair housing consulting, educational, and testing services for a period of three (3) years. Allstate's counsel and NFHA will execute a separate confidential consulting agreement (hereafter Consulting Agreement) with Allstate's outside counsel to protect the confidentiality of the services and reports to be provided.

   A. <u>Training</u>. Allstate already has in place a sales force training program to promote consistency in the sale and marketing of homeowners insurance. In recognition of Allstate's and NFHA's mutual goal to encourage consistency in sales and marketing practices (as reflected in Allstate's training materials), Allstate agrees to continue to train agents in the importance of consistency in sales and marketing practices and the importance of selling homeowners insurance policies without regard to race, color, religion, sex, handicap, familial status or national origin of the individual applicant and without regard to the racial/ethnic composition of the neighborhood in which the insured dwelling is located. In addition, Allstate agrees to

retain NFHA as a consultant to review its sales training and to assist Allstate in designing and augmenting its current materials consistent with NFHA's and Allstate's mutual goals.

B.  **Testing**.  Allstate will cause its outside counsel to engage NFHA for the purpose of conducting confidential testing of Allstate agents and employees throughout the term of this Agreement.  It is the intent of Allstate that NFHA and Allstate's outside counsel assist Allstate in conducting a self-evaluation or self-critical analysis for the purpose of insuring compliance with all applicable federal, state, or local laws.

As part of this self-evaluation, NFHA agrees to conduct at least 1200 tests of 100 Allstate agents.  Allstate's counsel and NFHA will reach mutual agreement as to the methodology to be utilized in the testing and as to those cities and locations to be tested.

NFHA shall not conduct any testing of Allstate outside of the Consulting Agreement with Allstate.  The terms of the Consulting Agreement, all documents related to the testing, and the results of the testing performed by NFHA and its members shall be confidential and privileged, and shall be revealed only to Allstate's counsel.  In reporting the results of its testing to Allstate's counsel, NFHA shall make no determination as to whether Allstate or its agents have engaged in any violation of applicable state or federal laws.  If NFHA subcontracts with any of its members to perform testing of Allstate under the Consulting Agreement, NFHA shall require such members to agree not to use or disclose any information related to such testing for any purpose other than to advise Allstate's counsel.

C.  **Rating Territories**.  NFHA acknowledges that (1) Allstate uses rating territories for purposes of pricing its homeowners insurance policies; (2) these rating territories may be subject to review and/or approval of state insurance regulators; and (3) Allstate recognizes that these rating territories must be supported by underlying data.  Within 90 days of the date of this Agreement, Allstate agrees to provide NFHA and HUD copies of state filed rate filings and the data supporting these filings in five cities and surrounding counties to be agreed upon by NFHA and Allstate.  Allstate will also provide NFHA and HUD with access to an employee from Allstate's Pricing Department to respond to any questions and issues NFHA may have concerning the rate filing or the underlying data.  All transmissions of information to NFHA and discussions with NFHA concerning the rating data shall be confidential pursuant to the terms of the confidentiality and use provision contained in the Consulting Agreement.  All transmissions of information to HUD shall be confidential pursuant to a separate confidentiality and use provision.

6

D. <u>Conferences & Meetings</u>. NFHA shall conduct, exclusively for Allstate employees and agents, at least two (2) annual conferences during the term of this Agreement at Allstate's home office in Northbrook, Illinois, relating to homeowners insurance availability and fair housing issues. In preparation for and as a part of these conferences, NFHA and appropriate Allstate representatives shall meet and discuss Allstate's national marketing and advertising programs, the use of credit reports and credit scoring as insurance underwriting tools, the designation of rating territories on geographic bases that are smaller than municipal boundaries, and other subjects of mutual interest to Allstate and NFHA.

In addition, Allstate and NFHA or its members shall meet on at least a quarterly basis throughout the term of this Agreement in the cities of Cincinnati, Milwaukee, Richmond, and Toledo to discuss matters of mutual interest. The subjects of these meetings will include, but need not be limited to: Allstate's establishment of a Neighborhood Partnership Program (NPP) in each of these cities; education of the community on insurance-related issues; local marketing and advertising initiatives; the use of credit reports and credit scoring as insurance underwriting tools; the designation of rating territories on geographic bases that are smaller than municipal boundaries; and other subjects of mutual interest to the parties.

E. <u>Compensation</u>. Allstate agrees to pay NFHA the fair market value for the services rendered under the Consulting Agreement. It is anticipated that the fair market value of those services will be no less than $500,000.

8. **Underwriting.** Allstate contends that any regulation of insurance underwriting matters is properly vested with state insurance regulators. NFHA contends that the investigation of allegations of homeowners insurance underwriting discrimination under the Fair Housing Act falls within the jurisdiction of HUD. Notwithstanding, consistency in the application of underwriting guidelines is a goal Allstate shares with HUD and NFHA.

A. <u>Maximum age and minimum value</u>. As a reflection of that mutually shared goal, over the past year, Allstate began designing and implementing, on its own initiative, underwriting guidelines which eliminate maximum age of dwelling and minimum value of dwelling as bases of eligibility for replacement cost homeowners policies in all states where it does business except in one state and portions of two states where risk of catastrophic loss has affected the issuance of new or renewal homeowners policies. Allstate agrees that it will develop a written notice to inform all Allstate insureds who currently hold a Select Value or Market Value homeowners policy of (1) the adoption of the changes to underwriting guidelines set forth in this paragraph and (2) their opportunity to obtain additional

coverage under those standards. Allstate agrees that, as part of its Consulting Agreement with NFHA, NFHA shall review and provide input to Allstate with respect to this notice. Allstate agrees to mail this notice to the insureds specified above, on a state-by-state basis at their next renewal, beginning 120 days after the date of this Agreement.

For the duration of this Agreement, Allstate agrees to maintain those underwriting guidelines which state that 1) maximum age of dwelling is not utilized as an eligibility requirement for replacement cost homeowners policies and 2) minimum value of dwelling is not utilized as an eligibility requirement for replacement cost homeowners policies, except in those states or areas of states where those guidelines are not appropriate because risk of catastrophic loss has affected the issuance of new or renewal homeowners policies or a state insurance regulator has notified Allstate that such guidelines are inconsistent with state insurance regulations. Allstate agrees to provide HUD and NFHA with notice of any further changes in the above underwriting guidelines at least 30 days in advance of their implementation during the term of this Agreement.

B. <u>Credit</u>. Allstate also agrees to maintain for a period of at least one year from the date of this Agreement its current underwriting guideline that decisions to decline coverage for homeowners policies will not be based solely on information in credit report[s] or credit scoring of the insured. Thereafter and for the remaining term of this Agreement, Allstate agrees to provide HUD and NFHA with notice of any changes in the above use of credit reports or credit scoring for purposes of making decisions concerning applicants' qualifications for homeowners insurance policies at least 30 days in advance of implementation of such change.

C. <u>Inspection</u>. Within 180 days of the date of this Agreement, Allstate agrees that in the context of the issuance of a "new business" homeowners replacement cost policy, risks that are similar with respect to the likelihood or severity of future loss will be subject to similar and consistently applied interior and exterior inspection criteria and processes which will be supported by empirical data and analysis related to insurability. "New business" means the first time that a homeowner obtains an Allstate replacement cost homeowners policy, including when an Allstate insured who has a Market Value or Select Value policy applies for a replacement cost policy at renewal but was previously ineligible for a replacement cost policy due to the value or age of the house at issue.

Such inspections will rely solely on an objective assessment of the physical characteristics and condition of the home and will not reference subjective criteria such as "pride of ownership" or "moral hazard." Allstate shall assess the

consistency of its inspection criteria and process on an annual basis for the three year term of this Agreement. This assessment shall be designed to ensure that the criteria for selection of homes for inspection are consistently applied without regard to the race/ethnicity of the owner or prospective owner of the home and without regard to the racial/ethnic composition of the neighborhood where the home is located.

During the term of this Agreement, Allstate agrees that it will continue to have a process whereby if a homeowner application is rejected based upon an interior inspection, the homeowner may obtain information concerning the inspection so that the homeowner may correct the condition(s) at issue. If such a homeowner corrects such condition(s) and meets all other existing eligibility guidelines, Allstate will issue the policy upon re-application.

D. <u>Notification of Reasons for Denial, Cancellation, or Nonrenewal</u>. No later than 180 days of the date of this Agreement, Allstate agrees, to the extent permissible under applicable state law, to implement a process whereby all applicants whose applications for homeowners insurance are denied, cancelled, or not renewed in part due to "financial instability" will receive written notification of: (1) that reason and any other reason (with a maximum of three reasons stated in each notice) for denial, cancellation, or nonrenewal; and (2) the address of a regional office they can contact for further information concerning the reason(s) for denial, cancellation, or nonrenewal and what additional information, if any, they could submit to support reconsideration of their application. Allstate further agrees, unless prohibited by state law, to continue providing this notice for as long as it maintains the policy set forth in Paragraph 8(B) of this Agreement that decisions to decline coverage for homeowners policies will not be based solely on information in credit report[s] or credit scoring of the insured. Further, Allstate will commence implementation of this notification process on a state-by-state basis as soon as Allstate receives the requisite approval from each state insurance regulator to utilize the notification required by this Paragraph 8(D).

9. **Future Dispute Resolution.** Within one hundred and eighty (180) days of the date of this Agreement, the Parties will develop a voluntary mediation program. Under the program, NFHA members (as specified in Exhibit B), as well as individual complainants contacting those members, will be encouraged to seek mediation as to claims or controversies against Allstate or an agent of Allstate allegedly arising under fair housing laws before filing a complaint with HUD or a substantially equivalent state agency. A hearing with a neutral (drawn from an agreed upon panel of persons, including former judges or other persons with insurance regulatory, civil rights, and general insurance

background and expertise) would be scheduled within thirty days of a request to mediate. Allstate will bear the expense of the neutral. The mediation will be voluntary and the parties to the mediation will preserve all rights. Nothing in this program will be intended to replace, displace or impede any consumer complaint mechanism or right available to an aggrieved person under any applicable state or federal law.

    a) NFHA shall encourage its members to use the mediation program to address any future claims or controversies between, on the one hand, such members or individual complainants contacting those members and, on the other hand, Allstate and/or its agents, which arise during the term of this Agreement.

    b) NFHA shall recommend and use its best efforts during the term of this Agreement to encourage individual complainants to submit to this mediation program any future claims or controversies against Allstate allegedly arising under fair housing laws.

10. **Review of Compliance with Agreement.** During the term of this Agreement, the Parties agree that the Secretary of HUD may review compliance with this Conciliation Agreement, may request written reports concerning compliance and may request to interview witnesses and to examine pertinent non-privileged records of the Parties. Allstate acknowledges that the Secretary of HUD asserts i) the authority to determine whether Allstate has complied with the terms of this Agreement, and ii) that if the Secretary has reasonable cause to believe that Allstate has breached the Conciliation Agreement, the Secretary may refer the matter to the Attorney General for enforcement.

11. **Reporting.** A. <u>Reporting to HUD.</u> Allstate agrees to provide HUD progress reports with respect to this Agreement ninety (90) days after the date of this Agreement and annually thereafter on the anniversary of the date of this Agreement throughout the three (3) year term of this Agreement. These reports shall be considered to be confidential documents and subject to non-disclosure agreements regarding such documents which are currently in place.

    Such progress reports shall contain the following information:

    1. A report on: (a) the status and activities of the NPPs referenced in Paragraph 6 of this Agreement in the cities of Akron, Cincinnati, and Toledo, Ohio, Richmond, Virginia, Milwaukee, Wisconsin, Memphis, Tennessee, St. Louis, Missouri, Los Angeles, California, Bridgeport and Hartford, Connecticut, Denver, Colorado, Kansas City, Missouri, Louisville, Kentucky, Miami, Florida, New Orleans, Louisiana, and Seattle, Washington;

(b) an analysis of any results accruing in these NPPs in terms of benefits to individuals and geographical areas served; (c) documentation that Allstate has placed a Sales and Service Center or an Allstate Agent location in the cities of Akron, Cincinnati and Toledo, Ohio, Richmond, Virginia, Milwaukee, Wisconsin, Memphis, Tennessee, St. Louis, Missouri, and Los Angeles, California pursuant to the timeframes set forth in Paragraph 6 of this Agreement; and (d) a summary of the Allstate Liaisons' work in the cities of Cincinnati, Milwaukee, Richmond, and Toledo as described in Paragraph 6 of this Agreement.

2. A description of qualitative and quantitative results of Allstate's efforts to promote equal opportunity in the provision of homeowners insurance including, but not limited to, a description of: (a) sales force training programs conducted to promote consistency in the sale and marketing of homeowners insurance; (b) conferences and meetings held for Allstate employees and agents relating to homeowners insurance availability and fair housing issues; (c) any outreach efforts that Allstate undertakes to recruit African-American or Latino agents and to promote the sale of homeowners policies to African-American or Latino homeowners or in predominantly African-American or Latino neighborhoods; and (d) any actions taken by Allstate regarding: efforts to ensure that Allstate underwriting policies, including its inspection criteria, are based on risks that are similar with respect to the likelihood or severity of future loss and are consistently applied, and that Allstate employees or agents treat persons seeking Allstate homeowners insurance policies or Allstate homeowners policy holders without regard to their race or national origin, and without regard to the location of their home in a predominantly African-American or Latino neighborhood.

3. Documentation that Allstate's inspection processes and criteria are objective and being conducted consistently in accordance with the criteria established in Paragraph 8(C) of this Agreement.

4. Documentation that Allstate has implemented the notification procedures to policyholders required pursuant to Paragraph 8(A) of this Agreement.

5. Documentation of Allstate's progress in developing and implementing the Notification of Reasons for Denial, Cancellation, or Nonrenewal required pursuant to Paragraph 8(D) of this Agreement. Allstate further agrees to provide to HUD no later than 210 days from the date of this Agreement, documentation sufficient to establish compliance with the provisions of Paragraph of 8(D) of this Agreement, including but not limited to copies of the notification letter to be used in each state and any written notification of approval or disapproval by a state insurance regulator.

6. A summary of any changes Allstate has made with respect to the boundaries of rating territories in the five cities described in paragraph 7(C) for purposes of pricing its homeowners insurance policies. This summary is in addition to the notification required pursuant to Paragraph 7(C) of this Agreement.

7. In addition to developing and dispatching the notification of a change in eligibility requirements for replacement cost homeowners insurance as specified in Paragraph 8(A), Allstate further agrees to send HUD no later than 120 days after the date of this Agreement: (a) a copy of the notice(s) that Allstate will be sending upon renewal, and (b) evidence that Allstate has commenced sending these notices upon renewal.

B. **Reporting to HUD and NFHA**. In addition to the notification activities set forth in Paragraph 8 of this Agreement, Allstate agrees to:

1. Provide HUD and NFHA with copies of any notification Allstate receives from a state insurance regulator that such guidelines are inconsistent with state insurance regulations. Allstate shall provide HUD and NFHA copies no later than 15 days after Allstate's receipt of such notification.

2. Pursuant to Paragraph 8(B), Allstate agrees to provide HUD and NFHA with notice of any changes in its current underwriting guideline that decisions to decline coverage for homeowners policies will be not be based on information in credit reports or credit scoring of the insured.

12. No amendment to, modification of, **waiver of**, or consent with respect to any provisions of this conciliation agreement or exhibits hereto shall be effective unless the same is in writing and signed by all parties. This Agreement and the Consulting Agreement referred to herein shall be executed simultaneously.

12

13. **Counterpart Signatures.** This Agreement may be executed in counterpart, and each copy signed shall be considered an original.

**SIGNATURES**

Date: _Feb 4, 1997_       _[signature]_
                          National Fair Housing Alliance

Date: _2/11/97_           _[signature]_
                          Allstate Insurance Company

Approved on behalf of the Secretary:

Date: _2/19/97_           _[signature]_
                          Director, Office of
                          Investigations, Office of Fair
                          Housing and Equal Opportunity,
                          U.S. Department of Housing and
                          Urban Development

Allstate Insurance Company
Media Relations (847) 402-5600
Shanna Smith, NFHA         (202) 898-1661
Sara Pratt, HUD (202) 708-0836

Allstate Insurance Company and National Fair Housing Alliance
Forge Partnership to Benefit Urban Insurance Consumers

Washington, D.C., February 19, 1997 -- The Allstate Insurance Company, the National Fair Housing Alliance (NFHA) and the Department of Housing and Urban Development (HUD) jointly announced today the resolution of fair housing administrative complaints filed by NFHA against Allstate. As part of the agreement, Allstate has invited NFHA to join forces with the company to help expand Allstate's existing programs to promote insurance opportunities in all neighborhoods, including its Neighborhood Partnership Program currently being implemented in urban centers across the country. NFHA will also consult with the company on sales training and testing for three years.

"We are very pleased with the agreement and the partnership we have established with the National Fair Housing Alliance," said Bob Pike, senior vice president, secretary and general counsel for the Allstate Insurance Company. "Allstate is one of the country's leading urban insurers with several aggressive initiatives already in place designed to support our growth objectives. We share with NFHA the mutual goal of serving this market and have solidified a plan to work together to expand insurance opportunities in urban neighborhoods across the country," he said.

(more)

Allstate/NFHA Partnership
-- Page 2 --

"We are pleased that our efforts to conciliate this complaint have resulted in such positive results. Allstate has demonstrated its commitment to continued self-evaluation of its own practices and enhanced outreach in African-American and Hispanic neighborhoods through this agreement," said HUD Secretary Andrew Cuomo. "HUD continues to support activities which will enhance home ownership opportunities in our urban communities and for African-American and Hispanic homeowners. The availability of homeowners insurance, especially replacement cost insurance, will continue to play a critical role in strengthening our communities," he said.

Based on market share, Allstate is either the number one or number two insurance company in the nation's urban centers. In addition to insurance products and services, Allstate has invested more than $15 billion in municipal bonds, supporting the infrastructure of cities across the country, and continues to play an active role in urban revitalization through various initiatives, including its Neighborhood Partnership Program (NPP).

Through NPP, Allstate partners with interested community groups/homeowner associations in urban centers to address risk mitigation and provide insurance education. The program is designed to help residents address both loss costs and the broader economic challenges facing the community.

Allstate has established its NPP in Atlanta, Chicago, Cleveland, Dallas, Detroit, Louisville, Washington, D.C., Houston, Milwaukee, New York and Philadelphia. The company already has plans to expand NPP this year to include Bridgeport and Hartford, Conn., and Denver, Los Angeles, Memphis, Miami, Kansas City, New Orleans, Seattle, and St. Louis. As part of the agreement, Allstate will expand its NPP program to include Akron, Cincinnati and Toledo, Ohio and Richmond, Virginia.

(more)

Allstate/NFHA Partnership
-- Page 3 --

"We are delighted to enter into this promising partnership with Allstate," said Shanna Smith, NFHA executive director. "Allstate has a very diverse workforce and has been implementing programs, marketing and sales practices to capture the good business opportunities in America's urban neighborhoods. We are also pleased that Allstate has agreed to implement the NPP in additional neighborhoods.

"Allstate's proven leadership in urban markets, combined with our experience in fair housing testing and training, is a win-win situation," said Smith.

The agreement was reached through a series of discussions held since the NFHA complaints were originally filed with HUD in 1994. Allstate denies the charges in the complaints and HUD made no determination that the Fair Housing Act was violated. In the interest of working cooperatively on common goals and to enhance the company's established urban initiative, Allstate has agreed to:

- Expand its Neighborhood Partnership Program (NPP) to include the additional cities of Akron, Cincinnati and Toledo, Ohio and Richmond, Virginia. The company will consult with NFHA members in identifying the appropriate neighborhood areas and community groups with which to partner and will open a sales and service center or an Allstate agent location in these cities.

- Maintain age-of-dwelling and minimum-value underwriting guidelines it established almost a year ago in nearly all states where it does business. Those guidelines state that age of dwelling and minimum value are not utilized as eligibility requirements for replacement cost homeowners policies. The company will provide written notice of the opportunity to obtain the additional coverage to all of its customers who currently hold a market value or select value policy.

- Utilize a homeowners inspection process based on an objective assessment of the physical characteristics of a home as a requirement for issuance of a "new business" replacement cost homeowners policy.

(more)

Allstate/NFHA Partnership
-- Page 4 --

- Maintain for one year its existing underwriting policy in which decisions to decline coverage for homeowners policies are not based solely on information in credit reports or credit scoring of the insured.

- Engage NFHA as an independent consultant to (1) implement a comprehensive testing program to help ensure quality and consistent customer service in urban markets, (2) enhance and augment established sales training programs and initiatives, and (3) conduct company seminars relating to homeowner insurance availability and fair housing issues. Allstate will pay the fair market value of the above consulting services rendered, anticipating that the services will be no less than $500,000.

"We have many checks and balances in place to assure consistent, quality customer service, and have been working on an agent 'testing' program to ensure customer satisfaction," said Pike. "We welcome NFHA's assistance with the implementation of this effort."

The parties also agreed to set up a voluntary mediation program. NFHA members will be encouraged to use this mediation process to address any claims or controversies involving Allstate.

"Allstate clearly demonstrates its commitment to fair treatment of all neighborhoods by utilizing both training and testing activities," Smith said. "The company is committed to teaching its agents and employees the spirit and letter of non-discrimination laws, and Allstate is moving beyond training by using testing to monitor the application of its non-discriminatory policies. This proactive step is a first in the insurance arena."

"The U.S. Department of Housing and Urban Development deserves credit for bringing the parties together in an atmosphere conducive to resolution," Smith said. "Ms. Sara Pratt, director of the Office of Investigations, facilitated the meetings and kept us all focused on a resolution designed to improve access to quality homeowners insurance products for homeowners in African-American and Latino neighborhoods across the country."

# # #

# EXHIBIT B

## NFHA MEMBER AGENCIES

Tenants' Action Group for Philadelphia of Philadelphia, Pennsylvania;
Fair Housing Council of Dane County of Madison, Wisconsin;
North East Wisconsin Fair Housing Council of Appleton, Wisconsin;
Austin Tenants' Council of Austin, Texas;
Fair Housing Council of Central New York, Inc. of Syracuse, New York;
Montana Fair Housing of Missoula, Montana;
The Fair Housing Partnership of Greater Pittsburg, Inc. of Pittsburg, Pennsylvania;
Housing Opportunities Made Equal of Richmond, Inc. of Richmond, Virginia;
Metropolitan Milwaukee Fair Housing Council, Inc. of Milwaukee, Wisconsin;
Northwest Fair Housing Alliance, Inc of Spokane, Washington;
Arkansas Fair Housing Council of Little Rock, Arkansas;
Southern Arizona Housing Center of Tucson, Arizona;
Walker Project, Inc. of Dallas, Texas;
Central Alabama Fair Housing Center of Montgomery, Alabama;
Fair Housing Council of Fresno of Fresno, California;
Tri-County Fair Housing Center of Saginaw, Michigan;
Truckee Meadows Fair Housing of Reno, Nebraska;
Fair Housing Council of Camden/Gloucester Counties, Woodbury, New Jersey;
Open Housing Center, Inc. of New York, New York;
Westchester Residential Opportunity, Inc. of White Plains, New York;
Fair Housing Advocates Association of Akron, Ohio;
Fair Housing Center of Toledo, Ohio;
Miami Valley Fair Housing Center of Dayton, Ohio;
Fair Housing Council of Oregon of Portland, Oregon;
Council for Concerned Citizens of Great Falls, Montana;
Fair Housing Council of Northern New Jersey of Hackensack, New Jersey;
Housing Coalition of Central Jersey of New Brunswick, New Jersey;
Long Island Housing Services of Islandia, New York;
Housing Opportunities Made Equal, Inc. of Buffalo, New York;
Fair Housing Contact Service of Arkon, Ohio;
Cuyahoga Plan of Ohio, Inc. of Cleveland, Ohio;
Housing Opportunities Made Equal Greater Cincinnati of Cincinnati, Ohio;
Metropolitan Fair Housing Council of Oklahoma City of Oklahoma City, Oklahoma;
Fair Housing Council of Suburban Philadelphia of Swarthmore, Pennsylvania;
Fair Housing Council of Greater Washington of Washington, D.C.;
Metro Fair Housing Services, Inc. of Atlanta, Georgia;
HOPE Fair Housing Center of Wheaton, Illinois;
Northwest Indiana Open Housing Center of Gary, Indiana;
Baltimore Neighborhoods, Inc. of Baltimore, Maryland;

## EXHIBIT B Continued

Lawyers' Committee for Civil Rights of Boston, Massachusetts;
Fair Housing Center of Washtenaw County of Ann Arbor, Michigan;
Jackson County Fair Housing Center of Jackson, Michigan;
National Fair Housing Alliance of Washington, D.C.;
HOPE, Inc. of Miami, Florida;
South Suburban Housing Center of Homewood, Illinois;
Leadership Council for Metropolitan Open Communities of Chicago, Illinois;
Kentucky Fair Housing Council of Louisville, Kentucky;
Housing Discrimination Project, Inc. of Holyoke, Maryland;
Fair Housing Center of Greater Grand Rapids of Grand Rapids, Michigan;
Fair Housing Center of Metropolitan Detroit of Detroit, Michigan;
Muskegon Area Fair Housing Center of Muskegon, Michigan;
Greater Birmingham Fair Housing Center of Birmingham, Alabama;
Fair Housing Congress of Southern California of Los Angeles, California;
Fair Housing Council of San Diego of San Diego, California;
ECHO Housing Assistance Center of Hayward, California;
Fair Housing Council of Orange County of Santa Anna, California;
Housing Rights, Inc. of Berkeley, California;
Midpeninsula Citizens for Fair Housing of Palo Alto, California;
Project Sentinel of Palo Alto, California;
Sentinel Fair Housing of Oakland, California;
Arizona Fair Housing Center of Phoenix, Arizona;
Fair Housing Council of San Gabriel Valley of Pasadena, California;
Fair Housing Council of the San Fernando Valley of Panorama City, California;
Fair Housing Foundation of Long Beach of Long Beach, California;
Marin Housing Center/Fair Housing Program of San Rafael, California;
Fair Housing Council of Riverside County, Inc. of Riverside, California;
Westside Fair Housing Council of Los Angeles, California;
Fair Housing Council of San Bernadino County CHRB of San Bernadino, California;
Housing for all Metro Denver Fair Housing Center of Denver, Colorado;
Fair Housing Center of So. Puget Sound, Tacoma, Washington;
Fair Housing Council of Montgomery County, Glenside, Pennsylvania;
The Housing Advocates, Inc., Cleveland, Ohio;
Greater New Orleans Fair Housing Action Center, Inc. of New Orleans, Lousianna; and
Metro St. Louis EHOC, St. Louis, Missouri.