# ATTACHMENT 2

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

05-94-1351-8

05-94-1352-8

CONCILIATION AGREEMENT

between

THE UNITED STATES OF AMERICA
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

and

NATIONAL FAIR HOUSING ALLIANCE
TOLEDO FAIR HOUSING CENTER

and

STATE FARM FIRE AND CASUALTY COMPANY and
STATE FARM GENERAL INSURANCE COMPANY

U.S. Department of Housing & Urban Development
05-94-1351-8
05-94-1352-8

## Conciliation Agreement

**WHEREAS** the National Fair Housing Alliance ("NFHA"), located at 1212 New York Ave., Suite 525, Washington, D.C., and the Toledo Fair Housing Center ("TFHC"), located at 2116 Madison Avenue, Toledo, Ohio 43624, respectively filed administrative complaints (the "Administrative Complaints") with the U.S. Dept. of Housing and Urban Development ("HUD") on August 1, 1994, against State Farm Fire and Casualty Company and State Farm General Insurance Company (collectively referred to as "State Farm"), and NFHA subsequently amended its administrative complaint on September 14, 1995; and

**WHEREAS** NFHA and TFHC have asserted that the Administrative Complaints were filed by them after the receipt of complaints from alleged victims of discrimination by State Farm and after random "testing" of State Farm agents was conducted in Toledo, Ohio, Chicago, Illinois and Milwaukee, Wisconsin; and

**WHEREAS** State Farm has denied the allegations of the Administrative Complaints and has asserted in response to the Administrative Complaints that State Farm is now and at all times relevant hereto has been strongly committed to the principles that State Farm's homeowners insurance will not be denied because of race, color, religion, sex, handicap, familial status, or national origin; and

**WHEREAS** State Farm has previously issued its corporate policy statement of nondiscrimination to its agents and employees, and agrees to reaffirm and reissue this longstanding corporate policy; and

**WHEREAS** State Farm has already undertaken measures to enhance its presence in urban areas, and has, for example, opened new sales and/or service facilities in urban neighborhoods in several cities; and

**WHEREAS** State Farm has begun to update its underwriting guidelines and standards, subject to review and approval by state insurance regulators; and

**WHEREAS** State Farm has denied that it or its agents have engaged in discriminatory practices of any kind in Toledo, Ohio, Chicago, Illinois, Milwaukee, Wisconsin or any other location, against the NFHA, TFHC or any other person; and

**WHEREAS** HUD commenced an investigation into the matters raised in the respective Administrative Complaints; and

**WHEREAS** State Farm contends that HUD does not have jurisdiction over the Administrative Complaints, and that the allegations in the respective Administrative Complaints do not state a cause of action under the Fair Housing Act against State Farm; and

**WHEREAS** NFHA and TFHC contend that HUD does have jurisdiction over the Administrative Complaints, and that the allegations in the Administrative Complaints do state a cause of action under the Fair Housing Act against State Farm; and

**WHEREAS** State Farm, NFHA and TFHC have cooperated with the investigation by HUD; and

**WHEREAS** HUD has made no determination pursuant to 42 U.S.C. § 3610(g)(1) and 24 CFR § 103.400 regarding whether, based upon the totality of factual circumstances known as a result of the investigation, there is reasonable cause to believe that a discriminatory housing practice has occurred or is about to occur; and

**WHEREAS** all Parties to this Agreement share a commitment to fair access to homeowners insurance, while supporting sound underwriting and insurance business practices; and

**WHEREAS** State Farm, NFHA and TFHC intend to confer with one another regarding matters relating to fair housing; and

**WHEREAS,** as a result of both negotiations between the Parties and their respective counsel and representatives, and taking into account the risks, uncertainties, burdens, and costs involved in this matter, as well as other relevant considerations, the Parties, their respective counsel and representatives have each concluded that it is in the best interests of all Parties to compromise and settle this matter in the manner and upon the terms and conditions set forth in this Conciliation Agreement;

**NOW, THEREFORE,** for and in consideration of the mutual agreements, covenants, and conditions contained in this Agreement, State Farm, the NFHA, the TFHC and HUD (the "Parties") hereby stipulate and agree as follows:

NFHA-00387

## General Provisions

1.      State Farm's entry into this Agreement is not, and shall not be construed as or deemed to be, an admission by State Farm, or evidence as to any issue of fact or law in this matter, including without limitation (a) the validity or viability of any of the NFHA's or TFHC's claims, (b) State Farm's liability to the NFHA, its members, the TFHC or any other person, (c) the allegation that State Farm engaged in any discriminatory practice, (d) whether State Farm engaged in any improper conduct in any way as a result of the matters alleged in the Administrative Complaints, (e) whether HUD has jurisdiction over the Administrative Complaints, or (f) whether the Fair Housing Act applies to the conduct challenged by the Administrative Complaints.

2.      The Parties agree to maintain the confidentiality of any information provided by the other during the course of the investigation and conciliation of this matter. The Parties further agree to return to the producing party any information or materials designated as confidential by the producing party and provided during the course of the investigation and conciliation of this matter. The Parties will further maintain the confidentiality of statements made and actions taken during the negotiation of this Conciliation Agreement. The Parties agree that information and materials which the parties have provided in connection with the investigation of this matter and identified by the producing party to be confidential are and will be treated as confidential pursuant to the agreements reached between the Parties. It is State Farm's position that any information it has designated as confidential and has provided in connection with the investigation of this matter constitutes proprietary and trade secret information, protected from disclosure under the Freedom of Information Act.

3.      On July 22, 1996, or on such other date as all of the Parties hereto may hereafter agree but no later than July 31, 1996, the Parties agree to issue a joint press release at a joint press conference announcing this Agreement in the form appended hereto as Exhibit A.

4.      The term "NFHA's members" as used herein, means the organizations and entities identified on Exhibit B to this Agreement, as well as any other entity that has or does become a member of the NFHA.

5.      The NFHA and TFHC, and each of their respective parents, subsidiaries, employees, officers, directors, independent contractors, testers, agents, attorneys, heirs, successors and assigns, and HUD (the "Releasing Parties") hereby forever release State Farm and its parents, affiliates, related parties, subsidiaries, officers, directors, employees, agents, employees of agents, attorneys, regional offices, predecessors, successors and assigns (collectively the "State Farm Released Parties") from any and all claims arising out of or related to claims or other matters which were or could have been asserted, or which otherwise were at issue in this matter or in the Administrative Complaints, including without limitation any claims based upon the testing of State Farm and/or its agents in

NFHA-00388

Toledo, Chicago, Milwaukee or in any other community. This release shall be construed as sufficiently broad to provide a release to the State Farm Released Parties which is coextensive with the reach of the doctrine of <u>res judicata</u>. In addition, the NFHA and TFHC Releasing Parties covenant not to sue the State Farm Released Parties for activity or conduct occurring during the term of this Agreement allegedly involving a violation of the Fair Housing Act, or state laws relating to fair housing issues or unfair discrimination.

6. State Farm reaffirms its commitment and agrees that State Farm's homeowners insurance will not be denied because of race, color, religion, sex, handicap, familial status, or national origin. State Farm has and will continue, throughout the term of this Conciliation Agreement, to make available all forms of its homeowners insurance, without regard to race, color, religion, sex, handicap, familial status or national origin.

7. During the term of this Agreement, the Parties agree that the Secretary may review compliance with this Conciliation Agreement, may request written reports concerning compliance, and may request to interview witnesses and to examine pertinent non-privileged records of the Parties. State Farm acknowledges that the Secretary of HUD asserts i) the authority to determine whether State Farm has complied with the terms of this Agreement, and ii) that if the Secretary has reasonable cause to believe that State Farm has breached the Conciliation Agreement, the Secretary may refer the matter to the Attorney General. State Farm agrees to provide to HUD reports in respect to this Agreement, which reports shall be considered to be confidential documents and subject to non-disclosure agreements regarding such documents which are currently in place, at 180 days after the execution of this Agreement and at the annual anniversary date of the execution of this Agreement, throughout the four-year term of this Agreement.

Such progress reports shall contain:

   a. A description of State Farm's progress in accomplishing the modification in underwriting guidelines described in Paragraph 11;

   b. Documentation sufficient to show State Farm's submission of such proposed modifications to state insurance regulatory authorities and their action thereon;

   c. The address of new urban sales and/or service locations opened, as described in Paragraph 13.a;

   d. Evaluation of the First Mortgage Financing Program;

   e. Status description of the pilot preapplication record-keeping program;

   f. Copies of State Farm's non-discrimination policy and the substance of the prospective notice to policyholders described in Paragraph 12; and

-5-

NFHA-00389

    g.    In respect to the annual reports, non-privileged documentation sufficient to show State Farm's performance of obligations pursuant to Paragraphs 10 through 18 hereof.

In addition, State Farm agrees on an annual basis during the term of this Agreement to make available for inspection, but not copying, a copy of State Farm's then current homeowners insurance underwriting guidelines for Ohio, Wisconsin and Illinois.

    8.    Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act is prohibited under 42 U.S.C. §3617.

    9.    **Duration:** This Conciliation Agreement shall have a duration of four years, with such period commencing on the date of the final execution of this Agreement.

    10.    **Statement of Nondiscrimination.** Within sixty (60) days of the date of this Agreement, State Farm will reissue to its agency force and employees, through a prominently displayed article authored by a high-ranking State Farm executive and published in the State Farm Times, a communication of general distribution to its agents and employees, State Farm's longstanding corporate policy statement of nondiscrimination, reaffirming that State Farm's homeowners insurance will not be denied because of race, color, religion, sex, handicap, familial status, or national origin. In addition, within ninety (90) days of the date of this Agreement, State Farm will commence distributing its nondiscrimination corporate policy to new employees and new agents as part of their orientation materials.

    11.    **Modification of Underwriting Guidelines.** State Farm contends that any regulation of insurance underwriting matters is properly vested with state insurance regulators. NFHA and TFHC contend that the investigation of allegations of homeowners insurance underwriting discrimination under the Fair Housing Act falls within the jurisdiction of HUD. State Farm agrees to change its underwriting guidelines for homeowners insurance on a national basis, as set forth in the subparagraphs below, subject to any filing with or review and approval by state insurance regulators as may be required with respect to underwriting guidelines, related rating matters and policy forms. Specifically, to the extent required under state law, State Farm will immediately commence and complete within two years of the date of this Agreement, submissions for review and approval by insurance regulatory authorities in each state for which such review and approval may be required, in order to modify State Farm's underwriting guidelines for homeowners insurance as set forth below:

    a)    State Farm will eliminate minimum coverage eligibility amounts;

    b)    State Farm will eliminate eligibility requirements linked to construction date cut-offs;

NFHA-00390

c) State Farm will further emphasize appropriate physical characteristics of the home as bases for eligibility, which may include but not necessarily be limited to general conditions, such as wiring, heating, air conditioning, plumbing and roof;

d) Any decision to decline coverage for an individual will not be based solely on information in credit reports;

e) State Farm will continue its practice of not declining coverage solely because another company did so or because the property was insured under a state FAIR plan or related residual market mechanism;

f) State Farm will modify its eligibility guidelines to lessen subjective terminology, including but not necessarily limited to elimination of "pride of ownership" language;

g) In at least one state on a pilot basis, for possible use in other states or countrywide as State Farm deems appropriate, State Farm will introduce a new non-tenant homeowners ("homeowners") insurance policy already in development to replace its existing homeowners insurance forms with coverages determined by insurance to value (i.e. the amount of insurance coverage compared to State Farm's estimate of the replacement cost of the home);

h) Regardless of State Farm's adoption of a new homeowners insurance policy form in other states, State Farm will encourage customers to insure to full replacement cost, with the customer ultimately choosing the insurance to value level appropriate for the customer's individual needs and goals; and

i) Any placement of homeowners policies between State Farm Insurance Companies would be determined solely on the basis of insurance to value.

12. **Prospective Notice to Policyholders.** State Farm will develop an appropriate mechanism for informing its homeowners insurance policyholders, in writing and by mail, of the new underwriting standards and the potential to obtain additional coverage under those standards. State Farm will also identify, through reasonably practicable means, any persons who, within the last twelve months in the Toledo area, have had their submitted applications for homeowners insurance declined by State Farm, and will mail written notice of these underwriting changes to such identified persons.

13. **Urban Investments.** The Parties acknowledge that, since the beginning of 1995, State Farm has opened new urban sales and service facilities in Cleveland, Tulsa,

Austin, Albuquerque, Bronx and Harlem. State Farm has also invested with Neighborhood Housing Services of America, a non-profit secondary market that purchases loans made by Neighborhood Housing Service ("NHS") to low or moderate income persons.

 a) <u>Sales or Services Facilities</u>. In order further to enhance the accessibility and availability of State Farm products in Toledo, State Farm will open a new Sales and Service Center in a Toledo location serving urban neighborhoods with a substantial minority population, including African-American and Hispanic communities. State Farm will use its best efforts to open this new Sales and Service Center facility located in zip code area 43602, 43610 or 43620, within one year of the date of this Agreement. In addition, in order further to enhance its presence in urban areas generally, since January 1, 1995, State Farm has already opened at least five sales and/or service centers in locations serving urban neighborhoods with a substantial minority population, including African-American and Hispanic communities, and will open an additional five sales and/or service centers in such urban locations by January 1, 1998.

 b) <u>First Mortgage Financing</u>. Within one hundred and eighty (180) days of the date of this Agreement, State Farm agrees, subject to any local, state or other governmental approval as may be required, to make $1,000,000 in loans available in Toledo for first mortgage financing. State Farm will loan these funds to Neighborhood Housing Services of America, which through its local chapter will then loan the funds at 4.5% interest rate to other Toledo community development corporations ("CDCs") of sufficient capability to undertake or arrange for mortgage financing. In order to receive these loan funds, the CDCs must service neighborhoods with substantial African-American populations. In addition, assuming that the properties meet State Farm's underwriting guidelines and standards and proper payment is made, State Farm agrees to insure the homes purchased through this program. After the initial million dollars in first mortgage loan funds is exhausted, State Farm will evaluate the program and consider reinvesting another million dollars in the program if it is successful.

14. **Advertising.**

 a) <u>National Advertising</u>. State Farm currently purchases advertising in the following national media vehicles, which target minorities: <u>Ebony</u>, <u>Essence</u>, <u>Visions</u>, <u>Hispanic</u>, <u>Hispanic Business</u>, <u>Vista</u>, Black Entertainment Network and The American Urban Radio Network. During at least the term of this Agreement, State Farm agrees to continue its national advertising efforts targeted to minorities, including African-American and Hispanic communities.

NFHA-00392

b)      Local Advertising. Within ninety (90) days after the opening of the new Sales and Service Center in Toledo, State Farm will develop and implement an advertising plan, including the use of minority publication(s), serving African-American and Hispanic communities, as to the availability of State Farm's products. Within ninety (90) days after the opening of each of the new sales and/or service centers called for under this Agreement that are opened subsequent to the date of this Agreement, State Farm will develop and implement a localized advertising plan, including the use of minority publication(s) serving African-American and Hispanic communities, to announce the opening of the new facility.

15.     **Consumer Education.** Within one hundred and eighty (180) days of the date of this Agreement, State Farm will develop and implement in Toledo a consumer education program, through an informational video and brochure to explain to consumers what choices in homeowners insurance products State Farm makes available. In particular, this program will inform consumers of the importance of insuring their homes to full replacement value and will describe available State Farm products. Within one year from the implementation of this pilot consumer education program, State Farm will evaluate the program for potential use as a national program, and will report its decision to HUD.

16.     **Corporate Compliance Program.** State Farm will reevaluate its corporate compliance program to assure compliance with principles of fair access to homeowners insurance and nondiscrimination.

a)      Training. Commencing within one hundred and eighty (180) days of the date of this Agreement, State Farm will provide special training, specifically directed to marketing, sales and service of homeowners insurance to urban and racially and culturally diverse markets, to its Ohio-based agents and underwriters who are involved in the marketing or underwriting of State Farm's homeowners insurance. In addition, within one hundred an eighty (180) days of the date of this Agreement, State Farm will develop and begin implementing plans for nationally incorporating within its established training programs for agents and underwriters, training modules specifically directed to marketing, sales and service of homeowners insurance to urban and racially diverse markets.

b)      Compliance Brochure. Within one hundred and eighty (180) days of the date of this Agreement, State Farm will publish and distribute a fair access to homeowners insurance brochure to its agents and underwriters who are involved in the marketing, underwriting or servicing of State Farm's homeowners insurance.

c)      Other Compliance Procedures. Within one hundred and eighty (180) days of the date of this Agreement, State Farm will reevaluate, develop

NFHA-00393

as necessary, and implement as it deems appropriate, self-evaluative and deliberative procedures to assess whether homeowners insurance applicants and policyholders with similar risk characteristics are being treated similarly in the pre-application, application and underwriting phases. These procedures may include, for example, sample file review and statistical analysis.

17. **Pre-Application Process.** Within one hundred and eighty (180) days of the date of this Agreement, State Farm will develop and introduce a pilot program in Toledo in order to provide further guidance to its independent contractor agents to follow regarding inquiries for homeowners insurance and to ensure that consistent treatment of similar inquiries is extended. After a trial period in a pilot location, State Farm will consider, in good faith, whether the program will be expanded, continued or discontinued.

18. **Future Dispute Resolution.** Within one hundred and eighty (180) days of the date of this Agreement, the Parties will develop a voluntary mediation program. Under the program, NFHA members, as well as individual complainants contacting those members, will be encouraged to seek mediation as to claims or controversies allegedly arising under fair housing laws before filing a complaint with HUD or a substantially equivalent state agency. A hearing with a neutral (drawn from an agreed upon panel of persons, including former judges or other persons with insurance regulatory, civil rights, and general insurance background and expertise) would be scheduled within thirty days of a request to mediate. State Farm will bear the expense of the neutral. The mediation will be voluntary and the parties to the mediation will preserve all rights. Nothing in this program will be intended to replace, displace or impede any consumer complaint mechanism available to an aggrieved person under any applicable state or federal law.

   a) NFHA shall encourage its members to use the mediation program to address any future claims or controversies between, on the one hand, such members or individual complainants contacting those members and, on the other hand, State Farm and/or its agents, which arise during the term of this Agreement.

   b) NFHA and TFHC shall recommend and use their best efforts during the term of this Agreement to encourage individual complainants to submit to this mediation program any future claims or controversies against State Farm allegedly arising under fair housing laws.

19. **Disputes Regarding Conciliation Agreement.** The Office of Investigations, Office of Fair Housing and Equal Opportunity, will use its best efforts to mediate any disputes arising under this Agreement between NFHA and/or TFHC, on the one hand, and State Farm on the other. In the event such mediation is unsuccessful, any such dispute shall be resolved by binding arbitration. Unless otherwise agreed in writing by

NFHA-00394

the Parties to such dispute, the arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the expedited procedures thereunder, except that the parties expressly do not constitute the American Arbitration Association as administrator of the arbitration (as provided in Rule 3 of such rules). There shall be one arbitrator chosen by agreement of the parties in dispute for any such dispute, who shall be a former judge or another person with insurance regulatory, civil rights and/or general insurance background and expertise. The arbitrator's fee shall be borne equally by each side to the dispute, subject to final apportionment by the arbitrator in the award.

20. **Reimbursement of Costs, Expenses and Attorneys Fees.** State Farm agrees to reimburse NFHA and TFHC for their cost, expenses and attorneys fees incurred in connection with their Administrative Complaints and these matters in the amount of one hundred thousand dollars ($100,000), within thirty (30) days of the date of this Agreement.

21. No amendment to, modification of, waiver of, or consent with respect to any provision of this conciliation agreement or exhibit hereto shall be effective unless the same is in writing and signed by all parties.

22. **Counterpart Signatures.** This agreement may be executed in counterpart, and each copy signed shall be considered an original.

## SIGNATURES

Date: July 22, 1996

_____
National Fair Housing Alliance

Date: 7-22-96

_____
Toledo Fair Housing Center

Date: 7/16/96

_____
State Farm General Insurance Company and State Farm Fire and Casualty Company

Approved on behalf of the Secretary:

Date: 7/22/96

_____
Director, Office of Investigations, Fair Housing and Equal Opportunity

-11-

NFHA-00395