[ORAL ARGUMENT SCHEDULED FOR NOVEMBER 20, 2024]
**No. 23-5275**

_____

IN THE UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT

_____

NATIONAL ASSOCIATION OF MUTUAL INSURANCE
COMPANIES,
Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT and ADRIANNE TODMAN, in
her official capacity  as Acting Secretary
of Housing and Urban Development,
Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

**SUPPLEMENTAL BRIEF FOR APPELLEES**

_____

_Of counsel_:

**JEANINE M. WORDEN**
_Associate General Counsel for Fair Housing_
 **AYELET WEISS**
_Assistant General Counsel for Fair Housing_
 **JULIA DYKSTRA**
 **PAUL OSADEBE**
_Trial Attorneys_
**U.S. Department of Housing**
 _and Urban Development_

**MICHAEL D. GRANSTON**
 _Deputy Assistant Attorney_
 _General_
**MICHAEL S. RAAB**
 **(202) 514-4053**
**STEPHANIE R. MARCUS**
 **(202) 514-1633**
 _Attorneys, Appellate Staff_
 _Civil Division, Room 7539_
 _Department of Justice_
 _950 Pennsylvania Ave., NW_
 _Washington, D.C.  20530_

## TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION ...................................................................................................1

ARGUMENT:  NAMIC LACKS ARTICLE III STANDING..................................1

CONCLUSION .....................................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Affum v. United States,*
  566 F.3d 1150 (D.C. Cir. 2009) .......................................................... 15

*American Chemistry Council v. Department of Transp.,*
  468 F.3d 810 (D.C. Cir. 2006) ................................................. 2, 4, 11, 12, 15, 17

*American Ins. Ass'n v. HUD,*
  74 F. Supp.3d 30 (D.D.C. 2014), *vacated,*
  No. 14-5321, 2015 WL 14038463 (D.C. Cir. Sept. 23, 2015) .......................... 15

*Animal Legal Def. Fund, Inc. v. Espy,*
  23 F.3d 496 (D.C. Cir. 1994) ................................................................ 4

*Avenue 6E Invs., LLC v. City of Yuma,*
  818 F.3d 493 (9th Cir. 2016) ................................................................ 5

*Betsey v. Turtle Creek Assocs.,*
  736 F.2d 983 (4th Cir. 1984) ................................................................ 14

*California v. Texas,*
  593 U.S. 659 (2021) ............................................................................ 8

*Charleston Hous. Auth. v. USDA,*
  419 F.3d 729 (8th Cir. 2005) ................................................................ 13

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...................................................................... 1, 5, 8

*Crete Carrier Corp. v. EPA,*
  363 F.3d 490 (D.C. Cir. 2004) .............................................................. 9

*Dehoyos v. Allstate Corp.,*
  345 F.3d 290 (5th Cir. 2003) ........................................................... 9-10

*Delta Constr. Co. v. EPA,*
  783 F.3d 1291 (D.C. Cir. 2015) ......................................................... 8-9

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) .............................................................. 16

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n,*
508 F.3d 366 (6th Cir. 2007) ........................................................ 14

*Huntington Branch, NAACP v. Town of Huntington,*
844 F.2d 926 (2d Cir.), *aff'd in part per curiam,*
488 U.S. 15 (1988) ........................................................ 13

*International Fabricare Inst. v. EPA,*
972 F.2d 384 (D.C. Cir. 1992) ........................................................16

*Langlois v. Abington Hous. Auth.,*
207 F.3d 43 (1st Cir. 2000) ........................................................ 13

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................ 2, 3, 11

*Mackey v. Nationwide Ins. Cos.,*
724 F.2d 419 (4th Cir. 1984) ........................................................ 9

*Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,*
558 F.2d 1283 (7th Cir. 1977) ........................................................ 13-14

*Mhany Mgmt., Inc. v. County of Nassau,*
819 F.3d 581 (2d Cir. 2016) ........................................................ 5

*Mountain Side Mobile Estates P'ship v. Secretary of Hous. & Urban Dev.,*
56 F.3d 1243 (10th Cir. 1995) ........................................................ 14

*NAACP v. American Family Mut. Ins. Co.,*
978 F.2d 287 (7th Cir. 1992) ........................................................ 9

*National Ass'n of Home Builders v. EPA,*
786 F.3d 34 (D.C. Cir. 2015) ........................................................ 14, 15

*National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
663 F.3d 470 (D.C. Cir. 2011) ........................................................ 10

*Nationwide Mut. Ins. Co. v. Cisneros,*
52 F.3d 1351 (6th Cir. 1995) ........................................................ 9

*Ojo v. Farmers Grp., Inc.,*
600 F.3d 1205 (9th Cir. 2010) ........................................................ 9

*PCI v. Todman*,
   - F. Supp.3d -, 2024 WL 1283581 (N.D. Ill. Mar. 26, 2024),
   *appeal docketed*, No. 24-1947 (7th Cir. June 3, 2024) ................................. 6, 11

*Resident Advisory Bd. v. Rizzo*,
   564 F.2d 126 (3d Cir. 1977) ............................................................. 13

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
   903 F.3d 415 (4th Cir. 2018) ............................................................. 5

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C.Cir.2002) ............................................................11

*South Coast Air Quality Mgmt. Dist. v. EPA,*
   472 F.3d 882 (D.C. Cir. 2006) ...........................................................16

*Swanson Grp. Mfg. LLC v. Jewell*,
   790 F.3d 235 (D.C. Cir. 2015) ............................................................. 4

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ..................................................................... 5, 9

*2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*,
   444 F.3d 673 (D.C. Cir. 2006) ........................................................... 14

**Statutes:**

42 U.S.C. § 3605(c) ......................................................................... 9

42 U.S.C. § 3607(b)(1) ..................................................................... 9

42 U.S.C. § 3607(b)(4) ..................................................................... 9

42 U.S.C. § 3610 ............................................................................ 11

42 U.S.C. § 3612(a) ................................................................... 10, 11, 12

42 U.S.C. § 3612(i)(1) ..................................................................... 10

42 U.S.C. § 3612(o) ................................................................... 10, 11, 12

42 U.S.C. § 3613 ....................................................................... 10, 13

**Other Authorities:**

54 Fed. Reg. 3232 (Jan. 23, 1989) ............................................................ 9

88 Fed. Reg. 19,450 (Mar. 31, 2023) ............................................... 1, 7, 8

GLOSSARY

"FHA"        Fair Housing Act

"HUD"        U.S. Department of Housing and Urban Development
             and the Acting Secretary of Housing and Urban Development

"NAMIC"      National Association of Mutual Insurance Companies

"PCI"        Property Casualty Insurers Association of America

## INTRODUCTION

On October 25, 2024, this Court directed the parties to file supplemental briefs addressing whether appellant National Association of Mutual Insurance Companies (NAMIC) has Article III standing to challenge the U.S. Department of Housing and Urban Development's (HUD) 2023 final rule governing discriminatory-effects claims under the Fair Housing Act (FHA), 88 Fed. Reg. 19,450 (Mar. 31, 2023) (2023 Rule).  As set forth below, NAMIC has failed to satisfy the core elements of injury-in-fact, causation, and redressability necessary to establish Article III standing.

## ARGUMENT

## NAMIC LACKS ARTICLE III STANDING

In its order requesting supplemental briefs addressing whether NAMIC has standing, this Court cited *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), in which the Supreme Court recognized that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. at 416.  That principle is dispositive here.

To establish associational standing, NAMIC must demonstrate that:  (1) at least one of its members would have Article III standing in its own right; (2) the interests it seeks to protect are germane to its purposes; and (3) neither the claim

asserted nor the requested relief requires that an individual member participate in the action.[1]  *See American Chemistry Council v. Department of Transp.*, 468 F.3d 810, 815 (D.C. Cir. 2006).  To satisfy the first requirement, NAMIC must show that at least one of its members has suffered (1) a "concrete and particularized" "injury in fact" that is "actual or imminent, not conjectural or hypothetical"; (2) that is fairly traceable to the challenged action; and (3) that is likely to be redressed by the relief requested.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks omitted).  As "[t]he party invoking federal jurisdiction," NAMIC "bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  At the summary judgment stage, NAMIC can no longer rely on "mere allegations," but "must set forth by affidavit or other evidence specific facts" to support its claims of injury.  *Id*. (quotation marks omitted).  NAMIC has failed to satisfy its burden here.

    **A.  1.**  NAMIC's allegations of injury are too speculative to confer standing.  The 2023 Rule merely reaffirmed the burden-shifting framework applicable to discriminatory-effects claims under the FHA that HUD initially adopted in a 2013 final rule (2013 Rule).  Indeed, neither the 2023 Rule nor the 2013 Rule imposes any requirements or restrictions on NAMIC or its member

---

[1] The second and third prongs of the associational standing test are not at issue here.

2

insurance companies, nor does either rule purport to decide any entity's liability under the FHA with respect to particular housing practices in specific settings.

In summary judgment briefing in 2016, NAMIC submitted declarations of insurance company executives asserting that the 2013 Rule would, at some undefined time in the future, require them to collect and analyze data to determine whether their ratemaking and underwriting practices cause a discriminatory effect on a protected class and how to address any such discriminatory effect.  *See* JA36-37; JA43-44; JA60; JA67; JA71; JA74; JA82-83.  These declarations are insufficient to show any cognizable injury, much less one that is actual or imminent.  To the contrary, the declarations merely speculate about possible future data collection and use that are not required by the HUD Rules or the burden-shifting framework adopted therein.  *See id.*; *Lujan*, 504 U.S. at 564 n.2 (concept of imminence "has been stretched beyond the breaking point when ... the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control").

Significantly, none of the declarations indicates that any insurers had started collecting and using data regarding protected traits when they were filed in 2016, three years after issuance of the 2013 Rule, and there is no evidence that NAMIC's members have done so since then.  *See* JA32; JA34-35; JA36; JA39-40; JA43-44; JA49; JA51; JA56; JA60; JA66; JA68; JA71; JA74; JA77; JA82.  Instead, the

3

declarations reflect that the insurers do *not* currently collect or use such data.  *See id*.;  Nor do the declarations provide specific timelines for future collection or use (*see id*.), and one insurer states that it "has no intention of collecting that data from current policyholders."  JA33.  NAMIC therefore fails to meet the injury-in-fact requirement.  *See American Chemistry Council*, 468 F.3d at 819-20 (association "had at least two opportunities to submit evidence to show standing for one of [its] members, and the Court is still left to wonder who, if anybody, has suffered an injury-in-fact"); *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994).

In its reply brief, NAMIC contends that as a result of pending litigation, the "enforceability and continued existence of the disparate-impact rule has been highly uncertain," and states that "notably, the government has never attempted to enforce the rule against a homeowner's insurer."  Reply Br. 15.  NAMIC further asserts that "[a]ccordingly, although the rule may have been technically in place since 2013, the absence of any negative effects says nothing about the effects the rule will produce once the legal challenges are resolved."  *Id*.  "This is … the kind of uncertain and unspecific prediction of future harm that is inadequate to establish Article III standing." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015).  NAMIC provides no reason to believe that any of its members will act any differently in the future, and the acknowledged lack of government

4

enforcement against homeowners insurers or any showing of harm despite the acknowledged applicability of the 2013 Rule only highlights NAMIC's failure to satisfy its burden of demonstrating actual or imminent injury.

Indeed, following the Supreme Court's decision in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.* (*Inclusive Communities*), 576 U.S. 519 (2015), courts of appeals have held that the Court implicitly adopted HUD's 2013 Rule, *see Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 618 (2d Cir. 2016), or have applied a burden-shifting approach consistent with the 2013 Rule, s*ee, e.g.*, *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424, 428, 432 n.10 (4th Cir. 2018); *Avenue 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 512-13 (9th Cir. 2016). Despite these holdings and the continued applicability of the 2013 Rule, NAMIC has not filed any new or updated affidavits to show that any member has collected or used any data regarding protected traits or has imminent plans to do so. As the Supreme Court has repeatedly emphasized, a "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotation marks omitted). Allegations of future harm that have not materialized in eleven years cannot be considered certainly impending.

5

**2.** Even if NAMIC had established an injury-in-fact, it would not satisfy the causation and redressability elements of the standing inquiry. Any underlying prohibitions on homeowners insurers derive from the FHA itself—and from the Supreme Court's holding in *Inclusive Communities* that the FHA encompasses discriminatory-effects claims—not the 2013 or 2023 Rule.  In the absence of the 2023 Rule, the FHA's prohibition on discrimination would remain unchanged and could be enforced by private individuals, with or without HUD's involvement. Thus, any alleged injury would not be fairly traceable to the 2023 Rule, nor would it likely be redressed by an order vacating the Rule as applied to homeowners insurers' ratemaking and underwriting practices.

**a.** Both the district court in the present case and the district court in a separate action filed by Property Casualty Insurers Association of America (PCI) challenging HUD's 2023 Rule concluded that the Rule does not require insurance companies to collect or use data regarding protected characteristics of insureds. JA139; *PCI v. Todman* (*PCI II*), - F. Supp.3d -, 2024 WL 1283581, at *21 n.26, *25 (N.D. Ill. Mar. 26, 2024), *appeal docketed*, No. 24-1947 (7th Cir. June 3, 2024).  As the district court properly concluded, "[n]owhere does the Disparate-Impact Rule require those engaging in housing practices to collect or use data on individuals' protected characteristics."  JA139; *PCI II*, 2024 WL1283581 at *25 (same).

6

Moreover, NAMIC's unsupported allegations about data collection and use and a potential threat to insurers' risk-based practices are based on its own misreading of the 2023 Rule.  As HUD made clear in the Rule, such allegations are "premised upon the faulty assumption that the rule prohibits risk-based practices or would require insurers to use protected traits," in ratemaking and underwriting processes, which "it does not."  88 Fed. Reg. at 19,470.  HUD further unequivocally stated that it "is also not requiring data collection."  *Id*. at 19,480. As HUD explained, "independent data gathering is not necessary to defend a lawsuit alleging discriminatory effects" as it is a plaintiff that has the "initial burden … to show a disparate impact."  *Id*.  The agency noted that "[d]efendants need not present their own statistics in response to [a plaintiff's] step one evidence, but may defend in numerous other ways, including by showing that the data put forward by plaintiff is incorrect or wrongly analyzed, or by showing at step two that the challenged practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest."  *Id*.  HUD also expressly refuted comments suggesting that the Rule would "force insurers to consider protected traits of individuals in the rating and underwriting process" or depart from actuarially sound risk-based decision-making.  *Id*. at 19,469-70.

Accordingly, even if a NAMIC member decided in the future to collect and use data regarding protected traits of insureds and such collection and use harmed

7

the member, it would be "inflicting harm on [itself] based on [its] fears of hypothetical future harm," which is not a proper basis for Article III standing. *Clapper*, 568 U.S. at 416.  NAMIC's alleged harms in the present action thus are not fairly traceable to the 2023 Rule; rather, even assuming *arguendo* that NAMIC had satisfied its burden of showing that members have incurred or will imminently incur costs with respect to data collection and use, such harm would be self-inflicted.  *See id*.

Indeed, NAMIC has failed to show that its members have suffered any injury attributable to the 2023 Rule, which did not impose or eliminate substantive liability under the FHA, but instead merely adopted the burden-shifting framework of a majority of courts of appeals for adjudicating discriminatory-effects claims. As HUD emphasized, the purpose of the 2023 Rule "is to recodify a long-recognized legal framework."  88 Fed. Reg. at 19,480.  And as the Supreme Court and this Court have recognized, when a separate, independent government action causes the same alleged harm as a defendant's challenged action, a plaintiff cannot establish that its injuries are fairly traceable to the defendant's actions.  *See California v. Texas*, 593 U.S. 659, 678-80 (2021) (States' alleged injury was not "fairly traceable" to challenged Affordable Care Act provision, nor was it redressable because other provisions of the Act that cause the States' alleged injury would remain in effect); *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir.

8

2015) (per curiam); *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493 (D.C. Cir. 2004).

In the absence of the 2023 Rule, the FHA's text would still prohibit housing discrimination, including facially-neutral practices that have a discriminatory effect. *Inclusive Communities*, 576 U.S. at 532-35.  Nothing in the text of the FHA exempts homeowners insurers' ratemaking and underwriting practices from the scope of the Act.  *Cf.* 42 U.S.C. §§ 3605(c), 3607(b)(1), (4)  (express exemptions from FHA liability for other practices).  Prior to the 2013 Rule, HUD issued regulations in 1989 formalizing its interpretation that the FHA applies to homeowners insurance, *see* 54 Fed. Reg. 3232, 3285 (Jan. 23, 1989) (1989 Rule), and three courts of appeals upheld the rule in recognizing that the FHA applies to homeowners insurance.  *See, e.g.*, *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010) (en banc) (per curiam); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1360 (6th Cir. 1995); *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 300-01 (7th Cir. 1992); *but cf. Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423 (4th Cir. 1984) (pre-1989 Rule case holding that FHA excluded insurance).  And in *Dehoyos v. Allstate Corp.*, 345 F.3d 290 (5th Cir. 2003), the Fifth Circuit held that the McCarran-Ferguson Act did not preclude a discriminatory-effects claims challenging an insurer's credit-scoring system under

9

the FHA. *Id*. at 299. In short, neither the 2013 Rule nor the 2023 Rule materially altered the legal landscape with respect to FHA claims against insurers.

Where, as here, a regulation essentially duplicates pre-existing legal duties, a plaintiff must still establish the traceability and redressability requirements to maintain standing. *See National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 663 F.3d 470, 474 (D.C. Cir. 2011) (association lacked standing because "risk of sanctions attendant on filling upland ditches without Corps approval predates, and is in no way aggravated by, the issuance of" the challenged agency action). In this case, NAMIC fails to allege any injury that is traceable solely to HUD's 2013 Rule or 2023 Rule, as opposed to the FHA itself, judicial precedent interpreting the FHA, and HUD's 1989 Rule.

**b.** Nor are NAMIC's alleged injuries redressable by the relief it seeks. Absent the 2023 Rule, private individuals would remain free to file suit against NAMIC members for FHA violations, and courts would remain free to adjudicate them under the FHA and *Inclusive Communities*. Indeed, under the FHA, individuals may file private court actions without HUD's involvement. 42 U.S.C. § 3613. And FHA complaints that are initially investigated by HUD that result in charges of discrimination are subject to judicial review in federal court. *Id*. § 3612(a), (i)(1), (o). Such complaints may, upon election of any party (including the respondent), proceed in a de novo civil action rather than through a hearing

10

before an administrative law judge. *Id*. § 3612(a), (o). Moreover, it is the FHA (not the 2023 Rule) that delineates HUD's statutory duties with respect to investigating and conciliating housing discrimination complaints or referring such complaints to state or local fair housing assistance program agencies. *See id*. § 3610.

**B.** Both the district court below and the court in *PCI II* nonetheless determined that the respective plaintiff insurance trade associations satisfied the injury-in-fact requirement based on the proposition that where a plaintiff is "an object of the [agency's] action," there is "ordinarily little question that the action * * * has caused him injury." *Lujan*, 504 U.S. at 561-62; *see Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C.Cir.2002); JA133; *PCI II*, 2024 WL 1283581 at *9. As this Court has made clear, however, that proposition does not eliminate the requirement that a plaintiff demonstrate an injury-in-fact sufficient to support Article III standing. *See*, *e.g.*, *American Chemistry Council*, 468 F.3d at 820. To the contrary, "[i]t is not enough to show, as the dissent argues from its observation that petitioners are part of the industry being regulated by the Final Rule, that there is a substantial likelihood that at least one member may have suffered an injury-in-fact." *Id*. Rather, where a plaintiff association contends that at least one of its members has standing, it is plaintiff's "burden to produce evidence of the

11

imminent nature of a specific harm to a specific party when an actual harm is absent." *Id*.

Here, NAMIC has failed to satisfy that burden.  NAMIC raises two central claims on appeal.  First, NAMIC contends that the 2023 Rule on its face requires its members to pervasively consider protected characteristics in their ratemaking and underwriting practices.  As discussed, HUD made clear in the rulemaking that the Rule does not contain any such requirement.  And as demonstrated, none of the declarations NAMIC submitted provides any evidence of an actual or imminent injury suffered by any of its members in connection with this alleged requirement.

Second, NAMIC argues that state insurance laws necessarily break the causal chain between homeowners insurers' ratemaking and underwriting decisions and any potential resulting discriminatory effect.  But NAMIC is free to assert state law as a defense to any complaint filed against it, whether with HUD or in federal court.  Moreover, NAMIC itself states that "notably the government has never attempted to enforce the [discriminatory-effects] rule against a homeowner's insurer," (Reply Br. 15), and has not made any showing that such enforcement is imminent.  In any event, even if an FHA complaint were initially filed with HUD against a NAMIC member in the future, and HUD were to file a charge of discriminatory-effects discrimination, de novo judicial review would be available in federal court at the NAMIC member's election.  42 U.S.C. § 3612(a), (o).  Nor

would a HUD finding that state law did break the chain of causation insulate NAMIC members from FHA court actions filed by private individuals. *See id*. § 3613.

The district court concluded, however, that NAMIC had standing because the "2023 Rule expressly applies to the insurance practices engaged in by NAMIC's members, and it exposes those insurers to disparate-impact liability beyond what they otherwise would." JA133. Although the 2023 Rule applies to homeowners' insurance practices, it does not "expose[] those insurers to disparate-impact liability beyond" what they are exposed to under the FHA itself. Significantly, as discussed, the 2023 Rule does not purport to decide whether any particular housing practice in any particular situation would give rise to liability under the FHA. Instead, it merely sets out a framework for considering disparate-impact claims. Nor does that framework increase insurers' exposure to discriminatory-effects liability; rather, prior to the 2013 Rule, 11 circuits had held that discriminatory-effects claims were cognizable under the FHA and had adopted the same or a similar burden-shifting approach to such claims.[2]  Moreover, as

---

[2] Several courts adopted a three-part burden-shifting approach, *see, e.g.*, *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49-50 (1st Cir. 2000); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 939 (2d Cir.), *aff'd in part per curiam*, 488 U.S. 15 (1988); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148-49 (3d Cir. 1977); *Charleston Hous. Auth. v. USDA*, 419 F.3d 729, 740-42 (8th Cir. 2005); one applied a four-factor balancing-test, *see Metropolitan Hous. Dev. Corp.*

discussed, the FHA's text does not exempt homeowners insurers' ratemaking and underwriting practices, and HUD's 1989 Rule and court decisions have recognized the Act's applicability to homeowners insurance.

The district court therefore erred when it concluded that the 2023 Rule "sets a legal standard under which insurance companies may become liable for violating the FHA," and "[t]hat legal exposure is an injury in fact caused by HUD's rulemaking," which "would be eliminated by a decision in NAMIC's favor." JA130-31. As set forth above, without the 2023 Rule, NAMIC's legal exposure would remain under the FHA, judicial precedent, and HUD's 1989 Rule. This Court's decision in *National Ass'n of Home Builders v. EPA,* 786 F.3d 34 (D.C. Cir. 2015), upon which the district court relied (JA131), does not support the court's conclusion. In that case, this Court emphasized that "[i]n regulated-party cases, as in other types of challenges, standing is always a case- and context-specific inquiry," and is not "automatic." 786 F.3d at 43 (quotation marks

---

*v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); two adopted a hybrid burden-shifting and balancing approach, *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 373 (6th Cir. 2007); *Mountain Side Mobile Estates P'ship v. Secretary of Hous. & Urban Dev.*, 56 F.3d 1243, 1252, 1254 (10th Cir. 1995); and one adopted a burden-shifting approach for private defendants and a balancing test for public defendants, *see Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 n.5 (4th Cir. 1984). This Court has not addressed which approach to take. *See, e.g., 2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 680 (D.C. Cir. 2006).

omitted).  Applying this principle, the Court determined that the plaintiff association lacked standing because declarations of its members were insufficient to show concrete or imminent harm, and it had not shown that the challenged agency action increased its members' risk of regulation or enforcement.  *Id*.

Indeed, as this Court has made clear, in cases in which courts have found that a plaintiff has standing because it is an "object of" a regulation, the plaintiff has shown that "either an actual harm (economic, aesthetic, or procedural) was present or the imminent nature of the harm to a specific entity or person was sufficiently established through affidavits or other evidence."  *See American Chemistry Council*, 468 F.3d at 821.  The decisions of this Court upon which the district court relied in its 2014 decision holding that NAMIC had standing are distinguishable on this ground.  *See American Ins. Ass'n v. HUD*, 74 F. Supp.3d 30, 37 (D.D.C. 2014), *vacated*, No. 14-5321, 2015 WL 14038463 (D.C. Cir. Sept. 23, 2015).

In *Affum v. United States,* 566 F.3d 1150 (D.C. Cir. 2009), for example, this Court explained that "[w]hen an agency enforces its regulations to disqualify an individual from a government program, it is commonplace that the agency's enforcement action gives rise to an Article III injury sufficient to permit the regulated party to challenge the regulations at issue."  *Id*. at 1158.  The 2023 Rule, in contrast, does not purport to determine liability for any practices of any insurers.

15

This Court's decision in *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 733-34 (D.C. Cir. 2003), is also distinguishable because there, the Court found that the putative intervenor would suffer an imminent economic loss that was fairly traceable to the regulatory action at issue. *Id*. at 733-34. NAMIC has not shown any concrete and imminent economic harm fairly traceable to the 2023 Rule.

Nor does *South Coast Air Quality Management District v. EPA,* 472 F.3d 882 (D.C. Cir. 2006), support the district court's conclusion. In that case, this Court held that an association of petrochemical manufacturers had standing to challenge the EPA's "comprehensive reworking of an Act that specifically controls the requirements for industrial pollution" because it was "inconceivable" that EPA's action "would fail to affect the requirements of even a single [association] member." *Id*. at 895-96. And in *International Fabricare Institute v. EPA,* 972 F.2d 384, 390 (D.C. Cir. 1992) (per curiam), this Court noted that petitioners or their members "operate public water systems and therefore will be directly regulated by the new drinking water standards" imposed by the challenged EPA rulemaking. *Id*. In contrast, the 2023 Rule does not impose any substantive requirements on homeowners insurers.

In sum, NAMIC has not shown that any of its members has suffered any actual harm, nor has it established imminent injury "through affidavits or other

16

evidence." *American Chemistry Council*, 468 F.3d at 821.  NAMIC therefore

lacks Article III standing.

## CONCLUSION

For the foregoing reasons, NAMIC lacks Article III standing

Respectfully submitted,

MICHAEL D. GRANSTON
  *Deputy Assistant Attorney General\**

OF COUNSEL:
JEANINE WORDEN                MICHAEL S. RAAB
  *Associate General Counsel for*      (202) 514-4053
  *Fair Housing*
AYELET WEISS                 STEPHANIE R. MARCUS
  *Assistant General Counsel for*       (202) 514-1633
  *Fair Housing*                 *Attorneys, Appellate Staff*
JULIA DYKSTRA                *Civil Division, Room 7539*
PAUL OSADEBE                *U.S. Department of Justice*
  *Trial Attorneys*               *950 Pennsylvania Ave., N.W.*
  *U.S. Department of Housing*       *Washington, D.C.  20530-0001*
   *and Urban Development*        *Stephanie.Marcus@usdoj.gov*

NOVEMBER 2024

\* The Principal Deputy Assistant Attorney General is recused in this matter.

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the word limitation in this Court's October 25, 2024 Order, the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. 32(a)(6).  The word processing program (Word for Microsoft 365) used to prepare the brief reports that the brief is 3,820 words long.  The brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 with Times New Roman, 14 point font.

/s/  Stephanie R. Marcus
Stephanie R. Marcus

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2024, I electronically filed the foregoing supplemental brief with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.  I further certify that on this 8th day of November, 2024, I served the foregoing supplemental brief on counsel of record for appellant by electronic service via the CM/ECF system.

/s/  Stephanie R. Marcus
Stephanie R. Marcus